## Weldon & Kelly Company, Appellant, v. Pavia Company.

Argued March 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Gifford K. Wright,* with him *Alter, Wright & Barron,* for appellant.

*John E. Evans, Sr.,* with him *Evans, Evans & Spinelli,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, April 16, 1946:

This is an appeal from an order of the court below confirming an award of arbitrators to whom the parties had submitted their differences.

On June 23, 1942, Weldon & Kelly Company entered into a written contract with the Housing Authority of the City of McKeesport to perform the plumbing work in connection with the E. R. Crawford Village Extension. On July 11, 1942, it entered into a written agreement with The Pavia Company whereby it sub-contracted to the latter the construction of the storm and sanitary sewers and the digging and back-filling of the water-line and gas-line trenches; the bid of The Pavia

Company, upon which this contract was based, was $21,000 for the sewers and $2,715 for the trenches; these amounts were subsequently changed to $20,925 and $2,790 respectively. The contract called for completion of the work on or before the 24th day of September, 1942, which was the same date as that stipulated in the principal contract between Weldon & Kelly Company and the Housing Authority.

The Pavia Company started performance immediately, bringing upon the premises for that purpose an air-compressor and mechanical shovels. By the latter part of October it had substantially completed the construction of the sewers and was ready to proceed with the digging of the trenches but could not go ahead until Weldon & Kelly Company furnished the pipe to be installed. As Weldon & Kelly could not supply the pipe because of inability to obtain the necessary priority ratings from the War Production Board, The Pavia Company removed its equipment to the site of another government operation. Some months later Weldon & Kelly Company obtained the pipe and, on April 12, 1943, wrote a letter to The Pavia Company calling upon it to proceed with the work. A conference was thereupon held between Domenick Pavia, Secretary of The Pavia Company, and Earle F. Young, Superintendent of Weldon & Kelly Company. According to the testimony of Pavia, he told Young that he was occupied on another job and did not have the necessary labor available; Young said to him "You have got to help us out . . . we are in awful fix over there". Young told Pavia that they had put their own force on the job; as a matter of fact Weldon & Kelly Company had had men digging the trenches for a week or two prior to this conference but they had run into solid slag which could not be removed by hand labor. Young stated that if The Pavia Company would bring back and operate the mechanical equipment Weldon & Kelly Company would have its own men do the rest of the excavation work but would nevertheless,

pay The Pavia Company the full amount originally agreed upon. Pavia assented to this proposition and accordingly The Pavia Company brought over the equipment, and, together with the labor employed by Weldon & Kelly Company, finally completed the work. ·

On May 25, 1943, Weldon & Kelly Company wrote to The Pavia Company that it intended to charge the latter with the wages it was paying for the hand laborers; it subsequently fixed this charge at $3,617.13, which it claimed as a set-off against the balance then due The Pavia Company. This claim being rejected, the dispute between the parties was referred, first, to the architect, and then to three arbitrators under the provisions of the Arbitration Act of April 25, 1927, P. L. 381. The arbitrators disallowed the counter-claim of Weldon & Kelly Company * and made an award to The Pavia Company of $6,415.71, which included the full sum of $2,790 for the excavation and back-filling of the trenches. The court below confirmed the award.

The Arbitration Act of April 25, 1927, P. L. 381, section 11(d), provides that the court may modify or correct an award of the arbitrators only "Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict."

The first question here presented is whether the contract of July 11, 1942, between Weldon & Kelly Company and The Pavia Company was abrogated as a result of the former's delay in supplying the pipe. The contract, calling as it did for performance by September 24, 1942, had obviously contemplated a prompt and speedy operation. While the delay in obtaining the pipe was not due to any wilful default on the part of Weldon & Kelly Company, The Pavia Company could scarcely have

---

* Weldon & Kelly Company also claimed a set-off of $843.49 which it had expended in order to complete the construction of the sewers; this claim was apparently allowed by the arbitrators and is not involved in the present appeal.

been expected to keep its equipment idle on the job for a protracted and indefinite period, especially in the midst of the war when there was an almost frenzied demand for labor and for all kinds of mechanical equipment. It is not necessary, however, to decide whether The Pavia Company had a right to an ex parte rescission of the contract, because the evidence justifies the conclusion that *both* parties treated the contract as abandoned; this is shown by the fact that Weldon & Kelly Company made changes in the plans for the gas and water-lines without notice to The Pavia Company and also that it had itself started the excavation work before notifying The Pavia Company to proceed; it is significant also that at the beginning it charged the cost of the labor which it employed against its contract with the Housing Authority and not against its contract with The Pavia Company. It would seem apparent that at first, therefore, Weldon & Kelly Company had no thought of holding The Pavia Company to its original agreement and would not have written the letter of April 12, 1943, had not its own men, by encountering the solid slag, found themselves unable to complete the work without the use of The Pavia Company's mechanical equipment.

"It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. And this may be shown by parol, by showing either an express agreement, or actions necessarily involving the alteration": *Holloway v. Frick*, 149 Pa. 178, 180, 24 A. 201; *Mazer v. Kann*, 343 Pa. 376, 379, 22 A. 2d 707, 708, 709. The agreement to rescind need not be expressed in words: it may be inferred from the acts and declarations of the parties inconsistent with the existence of the original contract: *Brentwood Realty Company v. Moses*, 73 Pa. Superior Ct. 307, 312.

The contract between the parties having been mutually rescinded or abandoned, the next question is whether Young had authority to make the new arrange-

ment with Pavia whereby Weldon & Kelly Company was to pay the full amount agreed upon in the original contract although itself supplying the hand labor necessary to complete the work of digging the trenches. George H. Ruth, Treasurer of Weldon & Kelly Company, testified on that point as follows: "Q. Did Mr. Young have authority to employ engineers and laborers and so forth in the contract on which he was superintendent? A. Anything in connection with labor and the job, he has the option." And again: "Q. Your superintendent did employ other persons to do work on the job out there and his engagements were recognized and paid by your company, weren't they? A. Yes, on materials that he ordered or labor. Q. Materials, labor, the engineer? A. Engineer; that is right. However, he had discussed the engineer with me before employing him." And again: "Q. Then I guess you don't question Mr. Young's authority to employ labor and workmen to dig this trench if this matter of the contract was out of the way. A. No, if it were in the general contract, of course, it would be, but not in violation of some other contract." From this it would seem clear that Young did have the authority to make the oral contract on which The Pavia Company now relies. Incidentally, it was Young who negotiated the original contract with Pavia.

A question is raised as to the allowance of interest on the award. Interest runs from the date when the award of the arbitrators is entered—in the present case August 31, 1945: *Jones v. Ringold*, 1 Yeates 480; *Buckman v. Davis*, 28 Pa. 211, 215; *Lackawanna Iron & Steel Co. v. Lackawanna & Wyoming Valley R. R.*, 299 Pa. 503, 508, 149 A. 702, 705. It is contended by Weldon & Kelly Company that the present proceedings were prematurely instituted because the contract between the parties provided that The Pavia Company was to be paid only when and as Weldon & Kelly Company received payment from the Housing Authority and there is still

due from the latter a balance of $9,634.45. It appears, however, that this sum is being retained only because of the pending controversy and that it will be paid immediately upon the conclusion of the present litigation. Moreover, Weldon & Kelly Company announced in its letter of May 25, 1943, that it intended to make a counter-claim or deduction from the amount owed The Pavia Company; this was an anticipatory breach which justified the latter in proceeding without waiting until the time for payment had arrived as specified in the contract.

Order affirmed; costs to be divided between the parties.