666 A.2d 695

**Marjorie COTTERMAN**

v.

**ALLSTATE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 8, 1995.

Filed Oct. 16, 1995.

Reargument Denied Dec. 18, 1995.

204

Joseph P. Lenahan, Scranton, for appellant.

Joseph P. Coviello, Clarks Summit, for appellee.

Before ROWLEY, President Judge, and CIRILLO and HOFFMAN, JJ.

CIRILLO, Judge:

Allstate Insurance Company ("Allstate") appeals from the order entered in the Court of Common Pleas of Lackawanna County denying Allstate's petition to vacate, modify and/or correct a statutory arbitration award. We affirm.

Appellee Marjorie Cotterman ("Cotterman") sustained personal injuries as a result of an automobile accident which occurred on March 11, 1991. The accident occurred in Huntington Township, Luzerne County, while Cotterman was riding as a passenger in a vehicle driven by Zane Welch ("Welch"). The driver of the other automobile was Timothy Yarnell ("Yarnell").

At the time of the accident, Yarnell was insured by The Harleysville Insurance Companies ("Harleysville"), policy number 738695. Cotterman carried automobile insurance issued by Allstate, policy number 008315273. On or about August 26, 1992, Harleysville paid to Cotterman the limits of Yarnell's liability policy—$91,831.16.[1] Allstate paid to Cotterman the limits of its liability for first party benefits—$5,000.00 for lost wages, and $10,000.00 for medical expenses.

Cotterman then made a claim for underinsurance (UIM) benefits under the Allstate policy. The matter proceeded to arbitration pursuant to the Uniform Arbitration Act ("UAA"), 42 Pa.C.S.A. § 7301 et seq. Prior to the arbitration hearing, Allstate requested permission to conduct an examination under oath (hereinafter an "EUO") of Cotterman. The arbitration panel denied this request, finding that no basis existed under either the insurance policy at issue or the applicable law to permit an EUO of Cotterman.

Cotterman's vocational and economic expert testified that the value of Cotterman's future wage loss ranged from $181,-800.00 to $281,800.00, depending on age of retirement. The arbitrators also considered expert testimony regarding the value of Cotterman's household services. The expert based

---

1. This figure was computed by subtracting from the limits of liability ($100,000.00) the amounts Harleysville previously paid to Cotterman for property damage and bodily injury ($8,168.84).

his opinion upon a two person household because, at the time of the accident, Cotterman had been residing with Welch for some time.

Other than the wage loss benefits paid to Cotterman in the amount of $5,000.00, the panel was not apprised of the amounts previously paid to Cotterman—i.e., the amount of $91,831.16 paid by Harleysville, plus the limits of Allstate's first party benefits. The parties agreed, however, that the arbitrators' award would be molded to reflect Harleysville's payment of $91,831.16.

On September 15, 1994, the arbitrators issued an award in favor of Cotterman in the amount of $299,000.00. Allstate received notice of the award and filed a timely petition to vacate, modify or correct the award before the Court of Common Pleas of Lackawanna County. The Honorable Frank P. Eagen denied the petition, molded the award to reflect Harleysville's payment of its limits of liability ($91,-831.16), and entered judgment in favor of Cotterman in the amount of $207,168.84. Judge Eagen also awarded to Cotterman interest on the judgment from the date of the award, September 15, 1994, at an annual rate of six percent.

Allstate filed this timely appeal. Allstate presents five questions for our consideration:

(1) Did the trial court err as a matter of law in upholding the arbitrators' decision to deny Allstate's request, in accordance with the insurance contract, for an examination under oath of the Plaintiff (Cotterman) prior to the arbitration hearing?

(2) Did the trial court err as a matter of law in failing to modify the arbitrators' award reflecting reduction of $5,000.00 wage loss previously paid by Allstate under first party benefits?

(3) Did the trial court err as a matter of law in failing to modify the arbitrators' award to an unmarried Plaintiff for loss of her own household services when:

(a) she incurred no out-of-pocket expenses to hire someone to provide household services, and

(b) damages were speculative by her own expert's testimony?

(4) Did the trial court err as a matter of law in failing to mold the arbitrators' award to conform to the contractual liability limit of the policy?

(5) Did the trial court err as a matter of law in granting interest dating from the September 15, 1994, award at an annual rate of six percent?

Chapter 73 of the Judicial Code regulates statutory, common law and judicial arbitration. More specifically, sections 7301 through 7320 of Chapter 73 regulate statutory arbitration, 42 Pa.C.S.A. §§ 7301–20 (Uniform Arbitration Act ("UAA")), while sections 7341 and 7342 regulate common law arbitration, 42 Pa.C.S.A. §§ 7341–42.

When an agreement to arbitrate is not clear as to whether common law or statutory arbitration rules shall apply, the common law rules regulate the enforcement of the agreement and the award unless, subsequent to the agreement, the parties expressly, or by implication, agree that the statutory arbitration rules shall govern. 42 Pa.C.S.A. § 7302(a). *See Brennan v. General Acc. Fire and Life Assur. Corp.*, 524 Pa. 542, 574 A.2d 580 (1990); *Elkins & Co. v. Suplee*, 371 Pa.Super. 570, 538 A.2d 883 (1988). In the case at bar, the parties sought arbitration pursuant to the insurance policy which stated that "arbitration will take place as provided under the Pennsylvania Uniform Arbitration Acts of 1927 and 1980." This language constitutes an express provision, by the parties, for statutory arbitration. *Bowdren v. Aetna Life and Casualty*, 404 Pa.Super. 595, 601, 591 A.2d 751, 754 (1991).

Pursuant to 42 Pa.C.S.A. § 7302(d), a statutory arbitration award will be modified or corrected where the award is *contrary to law*, but only in the following circumstances:

(i) The Commonwealth government submits a controversy to arbitration.

(ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration.

(iii) Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.

*Id.*

In the instant case, neither the Commonwealth nor a political subdivision is a party to the arbitration. Therefore, section 7302(d)(iii) is appellant's only possible recourse for judicial review. We have previously stated, however, that there are only two cases which, without more, shall be viewed as falling within section 7302(d)(iii):

(1) agreements to arbitrate made prior to December 4, 1980, the effective date of the 1980 Act, expressly providing for arbitration pursuant to the laws of the Commonwealth; and

(2) agreements to arbitrate, made either before or after 1980, expressly providing for arbitration under the 1927 Act [which provided for a contrary to law standard for review].

*Popskyj v. Keystone Ins. Co.,* 388 Pa.Super. 429, 441, 565 A.2d 1184, 1190 (1989) (*en banc* ), *alloc. denied,* 525 Pa. 602, 575 A.2d 567 (1990).

Here, the Allstate insurance policy was executed after the effective date of the 1980 Act. The policy's arbitration provision, however, expressly provides that arbitration will be governed by both the 1927 Act and the 1980 Act. As such, the contrary to law standard is seemingly applicable to the instant arbitration award. 42 Pa.C.S.A. § 7302(d)(iii). *See Geisler v. Motorists Mut. Ins. Co.,* 382 Pa.Super. 622, 556 A.2d 391 (1989) (holding that contrary to law standard of review applied to dispute between insurer and insureds involving uninsured motorist coverage where insurance policy provided that if either party demanded arbitration to resolve a dispute involving uninsured motorist coverage arbitration shall be conducted in accordance with 1927 Act).

Notwithstanding the above, the instant arbitration provision also provides that the 1980 Act is applicable to UM/UIM arbitrations. The 1980 Act sets forth a more stringent standard for vacating, modifying and/or correcting statutory arbi-

tration awards. Section 7314, in part, permits a court to vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable; [2]

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 as to prejudice substantially the rights of a party; or

(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceeding under section 7304 and the applicant-party raised the issue of the existence of an agreement to arbitrate the hearing.

42 Pa.C.S.A. § 7314(a)(1). Section 7315 of the Uniform Arbitration Act permits the court to modify or correct an arbitration award where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

42 Pa.C.S.A. § 7315(a).

Before we can reach Allstate's substantive issues, we must determine which standard governs our review—the contrary

---

**2.** Section 7341 provides that an arbitrators' award may not be vacated unless "it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. § 7341.

to law standard of the 1927 Act, the more strict 1980 Act, or a combination thereof? As of the date of this opinion, this precise issue has not been addressed by the appellate courts of this Commonwealth.

This court has developed a preference for applying the 1980 Act, especially when it is unclear whether the parties intended to be bound by the 1927 Act or the 1980 Act. For example, in cases where the policy or agreement provided only that the Pennsylvania Uniform Arbitration Act would govern, without any mention of either the 1927 or 1980 Acts, this court has generally applied the limited standard of review of the 1980 Act. *See, e.g., Cigna Ins. Co. v. Squires*, 427 Pa.Super. 206, 628 A.2d 899 (1993) (holding that error of law standard is not applicable where policy in question was issued after effective date of 1980 Act, and policy did not require arbitration to occur under provisions of the 1927 Act); *Martin v. PMA Group*, 420 Pa.Super. 624, 617 A.2d 361 (1992) (applying 1980 Act where policy stated only that the Pennsylvania Uniform Arbitration Act governs); *Popskyj, supra* (same); *Azpell v. Old Republic Ins. Co.*, 382 Pa.Super. 255, 555 A.2d 168 (1989), *rev'd on other grounds*, 526 Pa. 179, 584 A.2d 950 (1991) (same).

To reconcile the conflicting standards in Allstate's arbitration provision, we find it more prudent, and more in line with the previous decisions of this court, to apply the latest enactment of the Pennsylvania legislature—the 1980 Act—to review the instant arbitration award. While the inclusion of both Acts in Allstate's policy is most likely the result of poor draftsmanship, we think it more consistent with the parties' intent to apply the later Act, which sets forth a narrow legal standard, as compared to the 1927 Act's broad scope of review. Additionally, this decision is consistent with this court's duty to construe the ambiguous language in the policy against the party which drafted the contract, herein the insurer. *Rusiski v. Pribonic*, 511 Pa. 383, 390, 515 A.2d 507, 510 (1986); *Geisler*, 382 Pa.Super. 622, 627, 556 A.2d 391, 393 (1989). Accordingly, sections 7314 and 7315 of the Judicial Code provide the applicable standards of review in this case.

■ Allstate first contends that the arbitrators' award should be vacated on grounds that the arbitrators erred in denying Allstate's pre-arbitration request to examine Cotterman under oath (an "EUO"). Allstate claims that such an examination would have allowed it to conduct an investigation into Cotterman's pre-existing conditions and into the validity of Cotterman's alleged damages. Allstate argues that the arbitrators' refusal to order an EUO was contrary to the governing insurance policy and, hence, "contrary to law." As articulated above, however, the contrary to law standard of the 1927 Act is not applicable to this case. We will nonetheless review Allstate's first contention, because Allstate argues, in the alternative, that the arbitrators' denial of the EUO is tantamount to misconduct by the arbitrators. 42 Pa.C.S.A. §§ 7314(a)(1)(ii), 7341. We disagree.

■ Allstate relies upon section 7309(b) of the UAA, 42 Pa.C.S.A. § 7309(b), and a provision in the insurance policy imposing a duty on the insured to cooperate in any settlement matters, for the proposition that the arbitrators denied Allstate a full and fair hearing by refusing to allow Allstate to conduct an EUO of Cotterman prior to the arbitration hearing. This arguments fails on both grounds.

Section 7309(b) provides:

**(b) Depositions.**—On application of a party and for use as evidence the arbitrators, in the manner and upon the terms designated by them, may permit a deposition to be taken of a *witness who cannot be served with a subpoena or who is unable to attend the hearing.*

42 Pa.C.S.A. § 7309(b) (emphasis added). This statute is clearly inapplicable to the facts of this case. Allstate does not, and cannot, contend that Cotterman is a "witness who cannot be served with a subpoena or who is unable to attend the hearing." On the contrary, Cotterman was capable of being served with a subpoena at all relevant time periods and was able to, and in fact did, attend the arbitration hearing. As such, the above-quoted passage does not pertain to Allstate's

request to conduct an EUO of Cotterman prior to the arbitration hearing.

Notwithstanding the inapplicability of section 7309(b), the arbitrators had exclusive jurisdiction to either grant or deny Allstate's request for an EUO of Cotterman. The language "may permit" in the statute reflects a clear legislative intent to place the decision of whether to order a deposition (or EUO) squarely within the discretion or province of the arbitrators. *Id.*

Here, the arbitrators exercised their discretion and found that an EUO of Cotterman was not a condition precedent to commencing arbitration. *See Pennsylvania General Ins. Co. v. Barr*, 435 Pa. 456, 459, 257 A.2d 550, 552 (1969) ("In other cases construing language virtually identical to that found in present arbitration provisions, we have held that it was for arbitrators to decide whether ... a condition precedent of recovery had been satisfied. . . ." (citations omitted)). We find that the arbitrators' decision did not amount to misconduct and did not deprive Allstate of a full and fair hearing so as to require vacating the award. 42 Pa.C.S.A. §§ 7314(a)(1)(ii), 7341.

■ Allstate contends that an EUO is required by the applicable insurance policy. This contention, too, is meritless. Page six of the Allstate policy contains the following duty of cooperation provision:

**Assistance and Cooperation of the Insured**

An insured person must assist us in making settlements, securing evidence, obtaining witnesses and in conducting suits. This includes disclosing all facts, and attending hearings and trials. That person must also help us recover from anyone who may be jointly responsible.

We are convinced that it was within the arbitrators discretion to determine that an EUO of Cotterman was not warranted under the terms of the insurance policy. *Cf. Harleysville Mut. Casualty Co. v. Adair*, 421 Pa. 141, 218 A.2d 791 (1966) (insurance policy required EUO of insured if so requested by the insurer); *Savage v. Commercial Union Ins. Co.*, 326

Pa.Super. 204, 473 A.2d 1052 (1984) (same). The only claim that Allstate makes regarding the above insurance policy provision is that the arbitrators' denial of an EUO of Cotterman "constituted misconduct." However, having already shown that the statute does not mandate that the arbitrators provide for such a discovery procedure, or that the language of the insurance provision specifies that an EUO be conducted, we find this claim also meritless.

Next, Allstate contends that the trial court erred in failing to modify and/or correct the arbitration award, when said award was not reduced by wage loss benefits of $5,000.00 already paid to Cotterman. This contention is not supported by the record.

As previously stated, the $5,000.00 wage loss benefit which was previously paid to Cotterman by Allstate was made known to the arbitrators. The payment was evidenced by a letter from Allstate to Cotterman, informing Cotterman that her first party benefits had been exhausted. That letter was entered into evidence at the arbitration hearing. There is nothing in the record to indicate that the arbitrators failed to consider this payment in rendering their award. More specifically, there is nothing in the record to support Allstate's contention that there has been a duplication of benefits. We find, therefore, that the trial court did not err in refusing to modify the arbitrators' award reflecting the $5,000.00 wage loss payment. 42 Pa.C.S.A. § 7315.

■ Allstate next contends that the trial court erred by failing to modify the arbitrators' award for loss of household services when there was no evidence of out-of-pocket expenses incurred by Cotterman and the damages were speculative according to Cotterman's own expert testimony. We cannot agree.

Cotterman's expert testified as to Cotterman's inability to perform household services in the future. The expert also opined as to the dollar value of such household services, based upon a two person household. There is no evidence that the arbitrators abused their discretion in fashioning the award.

In fact, there is no evidence indicating that the arbitrators included any amount in their award based upon loss of Cotterman's household services. In any event, such matters were solely within their discretion. *Majcher v. Bronder,* 401 Pa. 500, 165 A.2d 251 (1960).

Next, Allstate contends that the trial court erred in failing to mold the arbitrators' award to conform to the contractual liability limits of the policy. Based upon the 1980 Act's standard of review articulated above, an award may be modified only if the complaining party can demonstrate that the award was miscalculated, that the arbitrators based the award upon a matter not submitted to them, or that the award is deficient in form, but which does not affect the merits of the arbitration decision. 42 Pa.C.S.A. § 7315(a). Because none of these instances existed, this argument is without merit.

█ Finally, Allstate contends that the trial court erred in granting interest at a rate of six percent from the date of the arbitration award, September 15, 1994. Allstate claims that post-judgment interest, if any, should be calculated from the date of the trial court's order confirming the arbitration award, January 30, 1995. We disagree.

Section 8101 of the Judicial Code provides:

Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S.A. § 8101 (emphasis added).

It is well-established that interest runs from the date the award of the arbitrators is entered—in the present case September 15, 1994. *Weldon & Kelly Co. v. Pavia Co.,* 354 Pa. 75, 46 A.2d 466 (1946). After Cotterman's arbitration award was entered, the trial court denied Allstate's petition to vacate, modify and/or correct the award, molded the award to reflect Harleysville's payment of $91,831.16, and entered judgment in favor of Cotterman on January 30, 1995. As such, the judgment was entered pursuant to a previously rendered

arbitration award. Section 8101 provides that interest is to run from the date of said award, not from the date of the judgment.[3] 42 Pa.C.S.A. § 8101. We conclude, therefore, that the trial court calculated the interest on Cotterman's award from the proper date.

Order affirmed.

---

**3.** In so holding, we distinguish this decision with that of the Commonwealth Court's holding in *Dunmore Borough v. Dunmore Police Dept.*, 106 Pa.Cmwlth. 461, 526 A.2d 1250 (1987). In *Dunmore*, the court held that interest on an arbitration award did not begin to accrue until confirmation of the award was final. Section 7313 allows a court to confirm an award, on application of a party, unless grounds are urged for vacating or modifying or correcting an award. While the statute places a preference of recognizing an application to vacate/modify/correct over competing applications to confirm awards, 42 Pa.C.S.A. § 8101 does not treat imposition of interest on these judgments similarly. As such, we find that the Commonwealth Court's decision on the accrual date of the interest on confirmation of the arbitration award justified a different result under Section 8101.