**Midlantic Bank N.A. v. Accu-Tech Tool Inc.**

C.P. of Monroe County, no. 1245 Civil 1995.

*Alan L. Director,* for plaintiff.
*David A. Martino* and *Connie J. Merwine,* for defendants.

WALLACH MILLER, *J.,* July 12, 1996—Defendant John *C.* Young petitions this court to open the judgment entered against him by plaintiff Midlantic Bank. This case began on May 5, 1995, when plaintiff filed a complaint against defendant, Accu-Tech Tool Inc., John *C.* Young, James D. Young, and John *R.* Young. In the complaint, plaintiff sought recovery against Accu-Tech Tool for its default on a rental equipment lease agreement, and against John *C.* Young, James D. Young, and John *R.* Young in their capacities as guarantors on the lease agreement.

After receiving notice of the complaint, John *R.* Young contacted Connie Merwine, Esquire, in an effort to negotiate a settlement with plaintiff. There is a dispute as to whether Merwine was retained on behalf of all the defendants named in the action, or merely on behalf of John *R.* Young. During the course of settlement ne-

gotiations, counsel for plaintiff, Alan Director, Esquire, granted Merwine's request for an extension for filing an answer. Again, the parties dispute whether this extension applied to all defendants to the action, or only John R. Young. The extension granted by Director expired July 7, 1995.

On June 21, 1995, a default judgment was entered by plaintiff against defendant John C. Young. On July 5, 1995, all defendants, through David Martino, Esquire, filed an answer. At the time the answer was filed, defendant contends that he was unaware that a default judgment had been entered against him. On August 28, 1995, defendant filed a petition to open judgment, which plaintiff concedes was filed in a timely manner. An answer to the petition and supporting briefs by both parties were filed thereafter, oral argument was heard on July 1, 1996,[1] and the matter is now before the court for disposition.

In Pennsylvania, there are three factors a moving party must establish before the court may open a default judgment. The moving party must prove: (1) the petition to open was promptly filed; (2) a meritorious defense exists; and (3) the failure to act can be reasonably explained. *Schultz v. Erie Insurance Exchange,* 505 Pa. 90, 93, 477 A.2d 471, 472 (1984); *Hanna v. Key Computer Systems Inc.,* 386 Pa. Super. 8, 10, 562 A.2d 327, 328 (1989), *alloc. denied,* 524 Pa. 628, 574 A.2d 69 (1990); Pa.R.C.P. 237.3. Further, as the Superior Court has noted, "[o]ur consideration as to the presence or absence of these requirements is tempered by our

---

1. The praecipe for argument was listed by plaintiff for July argument court, but the prothonotary erroneously scheduled the argument for the June term. When both parties failed to appear for the June argument, an order was entered by this court denying the petition to open judgment. Upon learning of the scheduling error, we agreed to hear oral argument in the July term.

application of equitable principles, for we sit as would a chancellor in equity to determine how best justice can be served." *Buxbaum v. Peguero,* 335 Pa. Super. 289, 294, 484 A.2d 137, 140 (1984), quoting *Toplovich v. Spitman,* 239 Pa. Super. 327, 329, 361 A.2d 425, 426 (1976). Once these factors are established by the moving party, the court may exercise its equitable powers to open a default judgment. *Hanna, supra* at 10, 562 A.2d at 328.

Initially, we note plaintiff's concession that defendant's petition to open judgment was timely filed. Thus, the first requirement discussed above is not in dispute. Next, defendant asserts that he has raised a meritorious defense against the allegations raised by plaintiff. We agree. In his new matter, defendant asserts that plaintiff had an obligation to mitigate its damages, and failed to do so. In response, plaintiff denies any obligation to mitigate damages; further, plaintiff contends that the guaranty agreement between itself and defendant is absolute, and is not conditioned on any action taken by plaintiff against the lessee, Accu-Tech Tool.

In carefully reviewing the guaranty agreement entered into between plaintiff and defendant, we note the following language:

"You are hereby authorized, in the event of default by debtor under any of its obligations, to immediately proceed against the undersigned *for payment of all obligations which are owed to you by debtor* without the necessity of your having to proceed against debtor or any security relating to the obligations of debtor."

We also note the language contained at paragraph nine of the lease agreement. It states in pertinent part:

"If the proceeds of any sale of the equipment, after deducting all costs of taking, storage, repair and sale are insufficient to pay the said costs and the obligation, lessee agrees to pay any deficiency plus attorneys' fees

as aforesaid. If there is a surplus after payment of such costs and obligation, lessor agrees to pay same to lessee."

Although this provision seems somewhat unclear, our interpretation of it is that plaintiff has imposed on itself an obligation to mitigate damages through the sale of the equipment. It is hornbook law that when an instrument contains ambiguous language, it is our duty to construe the language against the party which drafted the contract. *Rusiski v. Pribonic*, 511 Pa. 383, 390, 515 A.2d 507, 510 (1986); *Cotterman v. Allstate Insurance Co.*, 446 Pa. Super. 202, 207, 666 A.2d 695, 699 (1995).

Taken together with the clause contained in the guaranty agreement, then, we read that a guarantor is liable for the "payment of all obligations which are owed" to the lessor by the lessee, to wit, the initial obligation plus costs, less proceeds obtained through the sale of the equipment. Thus, we find this to be a meritorious defense to plaintiff's claims against defendant.[2]

Finally, we turn to whether defendant has offered a reasonable excuse for his failure to file a timely answer. We note the deposition testimony of Merwine regarding her contacts with Director:

"Q: Did you contact Attorney Director who was representing the plaintiff in that matter?

"A: Yes, I did.

"Q: Will you tell us briefly what the gist of your contact was?

"A: I think I first talked with him via telephone. He was very friendly about the matter. We talked about the defendants and what had transpired. I advised him that [John R. Young] was in to see me and that we

---

2. We note that other defenses raised by defendant lack merit. For example, his claims regarding the $1 buyout option are clearly inapposite, as this option is only available "subject to the lessee having performed all of the terms and conditions" of the lease.

needed extensions to get some information together and contact everyone. He didn't have a problem with that, and we proceeded from there.

"Q: Did you send correspondence to him in that regard?

"A: I believe so.

"Q: I will show you defendants' 1. Is that the initial correspondence that you sent to him?

"A: Yes, it is.

"Q: I note the caption indicates Accu-Tech Tools et al. You were contacting him on behalf of all defendants?

"A: Yes. . . .

"Q: Now, while you were involved in these negotiations, did you request an extension of time to respond to the complaint?

"A: Yes, I did.

"Q: Was such a request granted?

"A: Yes. That was no problem. I spoke to [Director] at first on the phone and asked for an extension to file our answer.

"Q: Was that on behalf of all defendants?

"A: Yes, it was. . . .

"Q: I am going to show you what is marked as D-2. Can you identify that?

"A: Yes. This is my correspondence to Alan Director on June 13, 1995, indicating that we had spoken on the telephone and he had agreed to an additional extension.

"Q: Again, was that your belief that it was on behalf of all of the defendants?

"A: Yes." (Deposition testimony of Connie Merwine, Esq., 1/26/96, pp. 5-7.)

Similarly, the deposition testimony of defendant and John R. Young indicate their belief that defendant was

being represented by Attorney Merwine. (See deposition testimony of John *R.* Young, 1/26/96, p. 13; deposition testimony of John *C.* Young, 1/26/96, p. 16.)

We empathize with plaintiff's contentions that the written communications between it and Merwine could be read to mean that Merwine was acting only on behalf of John *R.* Young. We have reviewed the letters drafted by Merwine, and note that parts are somewhat carelessly worded. Taken as a whole, however, we find it reasonable that defendant believed that Merwine was acting on his behalf, and therefore his reliance on the July 7, 1995 extension secured from plaintiff by Merwine was reasonable, as well. As such, defendant has offered an acceptable explanation as to why his answer was not filed until July 5, 1995.[3]

In reaching this conclusion, we again underscore our equitable powers in determining whether the facts of this case warrant the opening of a judgment. *Buxbaum, supra* at 295, 484 A.2d at 140. In the instant matter, we find that the interests of both equity and justice are best served by granting the petition to open judgment. Therefore, we enter the following order.

## ORDER

And now, July 12, 1996, the order of June 3, 1996 is vacated, and defendant John *C.* Young's petition to open default judgment is granted.

---

3. Here, too, we note that defendant raises arguments which we find to be without merit. For example, defendant contends that the reason he did not receive proper notice of the default judgment was because it was sent to his former New Jersey address. This address was the same one listed in the complaint, and to which defendant admitted as true in his answer. As stated above, defendant's answer was filed some two weeks after default judgment had been taken against him.