Deborah KENNEDY, Appellant,

v.

Michael T. KENNEDY, Appellee.

Michael T. Kennedy, Appellant,

v.

Deborah Kennedy, Appellee.

Superior Court of Pennsylvania.

Argued March 9, 2004.

Filed Nov. 29, 2004.

Reargument Denied Feb. 11, 2005.

Nancy Winkelman, Philadelphia and Robert D. Feder, Philadelphia, for Deborah Kennedy.

Mark R. Ashton, Exton, for Michael Kennedy.

BEFORE: BOWES, McCAFFERY and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 Deborah Kennedy ("Wife") appeals from the judgment entered on February 20, 2003, following modification of an arbitration award governing the parties' claims for equitable distribution of marital assets. Wife also appeals from the final divorce decree entered on July 11, 2003. After careful review, we vacate the judgment, vacate the decree in part, affirm the decree in part, and remand both cases.

¶ 2 The following facts are pertinent. Wife and Michael T. Kennedy ("Husband") were married on June 10, 1978. Four children were born of the marriage: Conor, Michalea, Sean, and Ryan. In 1991, Husband formed Radnor Holdings Corporation, a company that manufactures foam and plastic products for use in the food service industry. Throughout the marriage, Wife was a homemaker.

¶ 3 On February 26, 1999, Husband created a Grantor Retained Annuity Trust ("GRAT") for the benefit of the children with 3,760 non-voting shares of Radnor Holdings Corporation stock.[1] The trust

---

1. These shares were valued at $13,306,640 for federal gift tax purposes in 1999, as evidenced

instrument directed the trustee to make one payment per year to Husband over a three-year period in an amount "equal to 37.134% of the initial fair market value of the property held in trust hereunder . . . ." Grantor Retained Annuity Trust of Michael T. Kennedy, 2/26/99, at 1. The instrument further provided that if Husband and Wife were both living when the final payment came due, the trustee would be required to "divide the remaining principal into a sufficient number of equal shares so that there [would] be one share for each then living child of [Husband's] and one share for each deceased child [of Husband] who [was] represented by then living issue." Id. at 4. Husband never added any other property to the GRAT; hence, the trustee paid Husband in Radnor stock, transferring shares from the trust corpus to Husband. Following the final transfer on February 25, 2002, Husband retained ownership of 2,187 shares of Radnor non-voting stock, and the remaining 1,573 shares were divided among the parties' children.

¶ 4 Wife filed for divorce on November 19, 1999, approximately three months before the trustee initiated the first stock transfer. On April 12, 2000, the parties executed a written contract labeled "Interim Distribution and Support Agreement" (the "interim agreement"), wherein they agreed to submit all economic claims to a designated arbitrator, Michael E. Fingerman, Esquire, whose decisions would be binding with respect to both parties. The interim agreement stated in relevant part that "any assets contained in . . . [the] 1999 Grantor Retained Annuity Trust of Michael T. Kennedy, dated February 26,

1999 . . . shall not be considered marital assets." Interim Agreement, 4/12/00, at 7. In addition, the agreement directed the arbitrator to fashion an equitable distribution order "based upon the marital assets held by the parties on · . . . December 31, 1999," and to assess the value of all marital assets as of the same date. Id.

¶ 5 When the parties proceeded to arbitration, Attorney Fingerman determined, inter alia, that Husband's interest in the 2,187 shares of Radnor stock that reverted to him pursuant to the terms of the GRAT constituted a marital asset subject to equitable distribution. Thus, in accordance with the interim agreement, Attorney Fingerman appraised those shares at their fair market value as of the specified valuation date, December 31, 1999. After conducting an exhaustive review of the parties' numerous assets and liabilities, Attorney Fingerman concluded that the marital estate was worth $30,371,584, and he calculated Wife's share to be $12,000,000.

¶ 6 Following the denial of his petition to vacate or modify the arbitration award, Husband appealed to the Philadelphia Court of Common Pleas.[2] · Husband claimed that Attorney Fingerman exceeded · his authority under the· arbitration clause contained in the interim agreement by exercising jurisdiction over the 2,187 shares of Radnor Holdings Corporation stock that reverted to Husband. After hearing oral argument on this issue, the common pleas court found that the shares in question "were not owned by either party on December 31, 1999, but were the

by Husband's tax records. See Arbitration Award, 7/16/02, at 5.

2. Unlike the divorce action, which was litigated in Delaware County, the arbitration proceedings took place in Philadelphia County. Therefore, Husband properly appealed the ar-

bitration award to the Philadelphia Court of Common Pleas. See 42 Pa.C.S. § 7319(1) (application to court shall be made to court of county in which arbitration hearing was held).

property of a trust specifically excluded from the martial assets by the express agreement of the parties ...." Trial Court Opinion, 10/7/03, at 3–4. Consistent with this view, the court concluded that Attorney Fingerman lacked the power to characterize the stock as marital property and issued an order modifying the arbitration award, thereby reducing the value of Wife's share of the marital estate by $2,852,222. This appeal by Wife followed.[3]

¶ 7 Herein, Wife contends that: (1) the trial court lacked the power to modify the arbitration award under the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7362; (2) assuming *arguendo* that the trial court had the power to disturb the award, it erred in failing to remand the case to the arbitrator to reconsider the equitable distribution scheme; (3) assuming *arguendo* that the trial court had the authority to disturb the award, it erred in doing so; and (4) the trial court erred in failing to award post-judgment interest at a rate of 6% per annum retroactive to September 16, 2002.

■ ¶ 8 In reviewing a trial court's ruling on a petition to vacate or modify an arbitration award, this Court will reverse only for an abuse of discretion or an error of law. *MGA Ins. Co. v. Bakos,* 699 A.2d 751 (Pa.Super.1997); *accord Patton v. J.C. Penney Ins. Co.,* 445 Pa.Super. 317, 665 A.2d 510 (1995) (in determining whether trial court exceeded its authority in arbitration matter, Superior Court will reverse only for abuse of discretion or error of law).

¶ 9 Wife first contends the trial court had no authority to modify the arbitration award under 42 Pa.C.S. 7315, which provides in relevant part:

## § 7315. Modification or correction of award by court

(a) General rule.—On application to the court made within 30 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

42 Pa.C.S. § 7315(a)(1)-(3).

■ ¶ 10 Specifically, Wife argues that the trial court erred in determining that Attorney Fingerman exceeded his authority by fashioning an award that entailed equitable distribution of the 2,187 shares of Radnor Holdings Corporation stock that reverted to Husband pursuant to the GRAT. Husband counters that the court's actions were proper because he did not own or possess the shares in question when the parties signed the interim agreement, which stated that "any assets contained in ... [the GRAT] shall not be considered marital assets." Interim Agreement, 4/12/00, at 7. For the following reasons, we agree with Wife that the trial court had no authority to modify the arbitration award.

---

3. A final divorce decree was entered on July 11, 2003, incorporating the modified arbitration award without merger and without prejudice to Wife's appellate rights. Wife appealed the divorce decree in a timely manner, and

that appeal was consolidated with the appeal from the arbitration proceedings by way of stipulation of the parties on December 3, 2003.

¶ 11 The record establishes the following. When the matter proceeded to arbitration, Attorney Fingerman asked the parties to submit letter-memoranda regarding equitable distribution of the GRAT stock. Wife's memorandum stated in relevant part:

> **Under the terms of the parties' [interim] Agreement, the stock that reverts back to Husband is a marital asset.** Pursuant to the Agreement, equitable distribution shall be based on the marital property owned as of December 31, 1999. As of that date, Husband owned a reversionary interest for the GRAT. This reversionary interest was always stock, and never cash. Husband is trying to mislead the Arbitrator into thinking the reversionary interest is a fixed dollar amount, $8,384,800. This is factually wrong. The reversionary interest is, and has always been, stock, based on the annual appraised fair market value of the stock as determined by Husband for the GRAT, and the fixed reversionary amount of $14,823,000 set by the terms of the GRAT. As the share price goes up year-to-year, the amount of shares that revert back to Husband are reduced. Wife never agreed that the GRAT values for the stock would apply to her in equitable distribution. **The agreement provides that the assets contained in the GRAT are not marital property. The reversionary stock is not contained in the GRAT. It reverts back to Husband. Husband owns those shares.** As of this date, he owns 1,680 shares that reverted back to him. He will own even more shares after the February 2002 reversion. The Agreement does not provide that Wife agrees that the reversionary interest is worth $14,823,000. That is the value assigned by the GRAT for the annuity. Wife did agree that the marital assets would be valued as of December 31, 1999. The shares of stock that Husband owns through reversion (or otherwise), will be valued by Dr. Barenbaum as of December 31, 1999. Further, Wife agreed in paragraph 9 of the agreement that various assets gifted to the Kennedy children, including those [gifted] through the GRAT, shall remain assets of the children. Thus, as of December 31, 1999, Husband owned a reversionary interest in [Radnor Holdings Corporation] stock that he was certain to receive in three specific payments in February 2000, 2001, and 2002, and that stock should be valued as marital assets as of December 31, 1999. That is what the Agreement states. The timing of the reversion payments does not change the character of the stock as marital property. The valuation of the shares is to be determined by the Arbitrator, not fixed by the GRAT.

Wife's Letter–Memorandum, 2/1/02, at 3–4 (emphases added) (footnotes omitted).

¶ 12 Husband disputed Wife's position, asserting that his reversionary interest had a fixed value that bore no relation to the market value of the shares that reverted to him pursuant to the terms of the trust instrument:

> [O]n February 26, 1999[,] while the parties were still living together as Husband and Wife, [Husband] formed the GRAT and transferred to it all of his right, title, and interest in 3,760 shares of non-voting Radnor Holdings Corporation stock. [Husband] is not a trustee of the GRAT. He did reserve an annual annuity payment at the end of each of the following three twelve month periods. The annuity is payable to [Husband] while living, and [Wife] in the event of his death. The GRAT trustees determined that the amount of each annual annuity payment is $4,941,288.

. . . .

In no uncertain terms, the [parties' interim] agreement provides that any assets in the GRAT shall not be considered marital assets . . . .

Under the specific terms of the Agreement . . . the arbitrator is to value the marital property based on the marital assets held by the parties on December 31, 1999. On that date[,] [Husband] was entitled to an annuity from the GRAT. At all times relevant he has also held 480 voting shares of Radnor Holdings Stock.

Husband's Letter–Memorandum, 2/1/02, at 2–4.

¶ 13 Upon receiving the parties' memoranda, Attorney Fingerman made the following observations during the arbitration proceedings:

After reviewing each party's letter memoranda, tax return, the GRAT, and all of the supporting documentation, I'm of certain opinions . . . .

One, I believe it's undisputed that the assets in the GRAT, including the stock of Radnor Holdings Corporation which remains in the GRAT and does not revert to Mr. Kennedy, are the children's assets and are, therefore, non-marital and not subject to equitable distribution.

. . . .

Second, the reversionary interest, the quote "retained annuity" unquote of the Grantor Retained Annuity Trust or the GRAT, if you will, is subject to equitable distribution.

And third, all assets are to be valued as of December [19]99 in accordance with paragraph nine of the Interim Distribution and Support Agreement.

I believe those three items are not in dispute. I further believe as follows: It's Mr. Kennedy's position that the value of the reversionary interest as of December of '99 is a dollar amount which was initially presented to me as $8,384,800.00, but that might have been as of September [19]99 . . . .

. . . .

It's Wife's position that she did not agree to the value of the reversionary interest as valued by Mr. Kennedy. She didn't agree to the value of the annuity set forth in the pretrial statement or in the net worth statement, which was presented to wife previously . . . .

That if Mr. Kennedy received cash as the reversionary interest, then [the value of the reversionary interest] would have been the value of the cash received. But if he received stock, it's the value of the stock received as of 12/31[/99] because that's when we all agreed to value the stock.

Moreover, it's Mrs. Kennedy's position that it was always contemplated that Mr. Kennedy would receive stock as the reversionary interest rather than cash . . . . And indeed Mr. Kennedy received stock.

Therefore, as of [the] date of separation, the martial asset was a reversionary interest in the stock of Radnor Holdings Corporation and it was agreed that that stock would be valued as of December of 1999.

. . . .

Before I move on and now I'm ready to move on to the compensation experts. Do any of the attorneys have any comments to anything I have said so far?

[Wife's counsel]: The only thing I would ask for is a brief recess. We'd like to explain certain things to the client and if we could have three or four minutes to let her know so she can understand.

[Attorney Fingerman]: That's fine. I wanted to say all of that because I need to set the table here and I think I have done so accurately.

. . . .

(At which time, the proceedings are off the record at 10:03 a.m.)

N.T. Arbitration Hearing, 4/22/02, at 27–31 (emphases added).

¶ 14 Husband never challenged Attorney Fingerman's characterization of the GRAT reversionary interest as a marital asset subject to equitable distribution; indeed, the only issue in dispute was the **value** of the reversionary interest. Husband maintained that his reversionary interest had a fixed value that had been calculated by the trustee. *See* Husband's Letter–Memorandum, *supra.* Conversely, Wife argued that since Husband received annuity payments in the form of Radnor stock, his reversionary interest equaled the market value of that stock as of December 31, 1999. After considering the evidence adduced at the arbitration hearing, Attorney Fingerman adopted Wife's position and rendered detailed findings of fact:

**1. Husband's position:**

(a) It is Husband's position that the value of the reversionary interest as of December, 1999, which Husband initially calculated at $8,384,800 as of September, 1999, corrected to the present value of the gift tax valuation at $13,306,640, is the value of the "marital asset" subject to equitable distribution. Establishment of the GRAT was an "arms-length" *bona fide* transaction; all non-voting stock at date of separation was in the GRAT; and therefore under the Interim Distribution & Support Agreement and the law is out-of-the "pot" for purposes of equitable distribution.

(b) Husband also testified at the hearing that his intent was to transfer all non-voting shares to the children through the GRAT, and that he will continue to do so after the [arbitration] Award so that eventually all non-voting shares are held for the benefit of the children.

**2. Wife's position**

(a) It is Wife's position that she did not agree to the value of the reversionary interest as valued by Husband. She did not agree to the value set forth in Husband's Pre–Trial Statement . . . or any other value assigned by Husband.

(b) If Husband received cash as the reversionary interest, the "value" of the marital asset would be equal to the cash received, but since Husband received stock in [Radnor Holdings Corporation], it is the value of the stock received, valued as of December 31, 1999[,] per the parties' agreement, which is subject to equitable distribution.

(c) Moreover, it was always contemplated that Husband would receive stock rather than cash [from the GRAT trustee] . . . .

(d) As testified by Wife's forensic accountant, G. Daniel Jones, CPA, at the hearing in this matter, the GRAT contained only non-voting shares of [Radnor Holdings Corporation]; therefore, the GRAT did not have any other property (including cash) to pay back to Husband (thereby confirming the intent, when [the GRAT was] formed, to revert shares, rather than cash, to Husband, notwithstanding Husband's testimony that cash or other property could have been borrowed from a bank or otherwise by the Trustees, using the [Radnor Holdings Corporation] shares as security for payment of the Annual Annuity Amount to Husband).

(e) Husband did indeed receive stock in [Radnor Holdings Corporation] (as contemplated at inception of the GRAT); accordingly, the "marital asset" subject to equitable distribution is the stock of [Radnor Holdings Corporation] received by Husband from the GRAT, valued as of December 31, 1999[,] as previously agreed.

### D. CONCLUSION

**1. Marital Value:** The Arbitrator concludes that the "marital value" of this asset is the value of the shares of [Radnor Holdings Corporation] received by Husband pursuant to Paragraph FIRST of the GRAT, valued as of December 31, 1999. In February 2000, 937 shares reverted to Husband; in February, 2001, 743 shares reverted to Husband; for February, 2002, the Arbitrator advised the parties that he would assume 743 shares reverted to Husband, unless advised otherwise. On June 27, 2002, the Arbitrator was advised that under the third and final installment of the GRAT for the parties' children, 507 shares were returned to Husband. The foregoing results in total Class B non-voting common shares reverting to Husband of 2,187 shares.

Arbitration Award, 7/16/02, at 7–9.

¶ 15 Presently, Husband maintains that by subjecting his interest in the 2,187 GRAT shares to equitable distribution, Attorney Fingerman "divided assets expressly excluded by the Interim Agreement from the marital estate, [and therefore,] he plainly exceeded his authority." Husband's brief at 18. This claim distorts the true nature of the proceedings. As noted above, Husband never asserted that his reversionary interest in the GRAT shares, which he characterized as an annuity during the arbitration hearings, *see* Husband's Letter–Memorandum, *supra*, was not subject to equitable distribution. Accordingly, Husband's argument that Attorney Fingerman entered an award upon a matter not submitted for his consideration is unsupported by the record, and the trial court clearly erred in finding that it had the authority to modify the arbitration award under 42 Pa.C.S. § 7315(a)(2).

¶ 16 Contrary to the trial court's position, Mr. Fingerman did not decide an issue that was not submitted to him. The record clearly establishes that **both parties** agreed that Husband's reversionary interest in the 2,187 GRAT shares was a marital asset subject to equitable distribution. The only issue in dispute was the value of that asset. Husband claimed that his reversionary interest in the stock should be valued at $13,306,640, which represented the market value of the stock on February 26, 1999, the date on which Husband created the GRAT. Wife urged Mr. Fingerman to utilize the value of the stock as of December 31, 1999, the date mentioned in the interim agreement. After considering all of the evidence, including (1) Husband's admission that his reversionary interest was a marital asset; and (2) the interim agreement, which provided that all marital assets would be valued as of December 31, 1999, Mr. Fingerman adopted Wife's position. Hence, Mr. Fingerman did not exceed his authority with respect to this issue, and the trial court had no basis upon which to disturb the arbitration award.

¶ 17 Due to our resolution of Wife's first argument, we need not address her second or third issues; consequently, we will proceed directly to her final claim that the trial court erred in failing to award post-judgment interest at a rate of 6% per annum retroactive to September 16, 2002.

¶ 18 This claim involves the following facts. On the same day the interim agreement was signed, the parties executed a

separate document entitled, "Collateral Agreement Relating to Financing of Sums Due to Wife Under Arbitration Agreement" (the "collateral agreement"). The collateral agreement provided, *inter alia*, that after the arbitrator evaluated the marital assets and determined Wife's share of the marital estate, Husband would be required to make the first cash distribution to Wife within sixty days of that determination, and he would be required to pay 6% interest semi-annually on the unpaid balance. However, when Husband appealed the July 16, 2002 arbitration award to the trial court, the court refused to order Husband to pay 6% interest retroactive to September 16, 2002, based on its determination that the arbitration award required modification. Specifically, the court reasoned that since the original award was incorrect, interest did not begin to accrue until sixty days after entry of the order modifying the award, which was dated January 28, 2003.

¶ 19 Herein, Wife asserts that the trial court erred in failing to award interest in accordance with the terms of the collateral agreement because: (1) 42 Pa.C.S. § 8101 states in relevant part that "a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award;" and (2) the filing of an appeal does not affect the award of such interest. Husband counters that: (1) Wife breached the collateral agreement and therefore cannot enforce it; (2) the issue is moot because Husband has paid Wife $9,355,203, which is the amount owed pursuant to the modified arbitration award, plus interest totaling $239,425.

¶ 20 We agree with Wife that the Philadelphia Common Pleas Court erred in failing to award judgment interest from the date of the arbitration award. The court's ruling conflicts with 42 Pa.C.S. § 8101, which, as noted *supra*, clearly states that a monetary judgment shall bear interest from the date of the award. *See also Perel v. Liberty Mutual Ins. Co.*, 839 A.2d 426 (Pa.Super.2003) (interest accrues from date of original arbitration award even if award is subsequently modified); *Cotterman v. Allstate Ins. Co.*, 446 Pa.Super. 202, 666 A.2d 695 (1995) (interest runs from date arbitration award is entered).[4] Moreover, the fact that Husband appealed the arbitration award to the trial court does not affect Wife's entitlement to interest from the date of the award. *Scott v. Erie Ins. Group*, 706 A.2d 357 (Pa.Super.1998).

¶ 21 We now turn to Husband's contentions that Wife cannot prevail on this issue because: (1) she allegedly breached the collateral agreement by failing to transmit real estate deeds by the stated deadline; and (2) Husband has satisfied the judgment in full with appropriate interest. Neither claim merits relief. Husband provides no evidentiary support for his assertion that Wife breached the collateral agreement, and assuming *arguendo* that Wife did not tender the deeds by the specified deadline, that minor occurrence should not relieve Husband of his obligation to pay interest on the arbitration award. Similarly, there is no evidence that Husband has paid Wife $9,594,628 thus far; however, even if Husband did tender that sum, he still owes Wife at least

4. We are not persuaded by Husband's argument that the trial court's ruling was proper under *Dunmore Borough v. Dunmore Police Dept.*, 106 Pa.Cmwlth. 461, 526 A.2d 1250 (1987). We are not bound by decisions of the Commonwealth Court. *Bell v. Ferraro*, 849 A.2d 1233 (Pa.Super.2004). More importantly, however, we cannot overrule a prior panel decision of this Court. *See Commonwealth v. McCormick*, 772 A.2d 982, 984 n. 1 (Pa.Super.2001). Thus, Husband's claim fails.

$2,405,372, as we have determined that the original $12,000,000 arbitration award was proper. Accordingly, the trial court's refusal to award interest retroactive to September 16, 2002, is not moot.

¶ 22 For all of the foregoing reasons, we vacate the judgment entered on the arbitration award and remand the case at docket No. 2443 EDA 2003 to the Philadelphia Court of Common Pleas for reinstatement of the original arbitration award. In addition, the court is directed to order Husband to pay post-judgment interest at a rate of 6% per annum on any amount not paid by September 16, 2002, as per the terms of the collateral agreement. Lastly, we vacate that portion of the divorce decree that incorporated the modified arbitration award and remand the case at docket No. 2377 EDA 2003 to the Delaware County Court of Common Pleas with instructions to incorporate the original arbitration award.

¶ 23 Judgment vacated. Decree vacated in part and affirmed in part. Cases remanded. Jurisdiction relinquished.

¶ 24 Judge Popovich files a Dissenting Opinion.

## DISSENTING OPINION BY POPOVICH, J.:

¶ 1 I respectfully disagree with the majority's finding that the trial court had no basis upon which to disturb the arbitration award and that the trial court erred by failing to award judgment interest from the date of the arbitration award.

¶ 2 Firstly, I disagree that the trial court did not have the authority to modify the arbitration award. Section 7315(a)(2) of the Uniform Arbitration Act states that the trial court may modify or correct an arbitration award when "the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted." 42 Pa.C.S.A. § 7315(a)(2).

¶ 3 Attorney Fingerman entered into an agreement to arbitrate with Husband and Wife that stated that Attorney Fingerman agreed to abide by the provisions of the interim agreement and the Uniform Arbitration Act. See Agreement to arbitrate, 6/25/01, at 1–2. The interim agreement stated specifically that any assets contained in the GRAT were not to be considered marital assets. Interim agreement, 4/12/00, at 7. Parties can, by contract, exclude specific property from being included as marital property. 23 Pa.C.S.A. § 3501(a)(2). Therefore, I would find that Attorney Fingerman's decision to address the issue was in error because the interim agreement provided him with no authority to make findings regarding property which was excluded by the parties as marital property. Accordingly, I believe that the issue of the GRAT shares was never properly before Attorney Fingerman.

¶ 4 Furthermore, the majority quotes at length both parties' respective arguments on the issue of whether the GRAT shares were to be considered marital property set forth in their letter-memoranda submitted to Attorney Fingerman. It is my belief that the parties' letter-memoranda should not have been considered since Attorney Fingerman did not have the authority to request the parties to submit these letter-memoranda. Additionally, I disagree with the majority when it states that Husband admitted that his reversionary interest in the stock was a marital asset. See Majority opinion, at 885. The majority bases its finding, in part, on Husband's failure to dispute Attorney Fingerman's findings at the arbitration hearing, as follows: "Second, the reversionary interest, the quote 'retained annuity' unquote of the Grantor Retained Annuity Trust or the GRAT, if

you will, is subject to equitable distribution." N.T. Arbitration hearing, 4/22/02, at 27–31. As I believe that Attorney Fingerman did not have the authority to address this issue at the hearing, I would find that Husband's failure to object to Attorney Fingerman's statement did not constitute an admission. Thus, I would find that the first requirement of Section 7315(a)(2) was met when Attorney Fingerman ruled on the GRAT shares, which were not marital property by the interim agreement and not before him.

¶ 5 I would conclude that the second requirement of 42 Pa.C.S.A. § 7315(a)(2) was satisfied because the arbitration award could have been corrected without affecting the merits of the decision upon the issues submitted. Attorney Fingerman valued the parties' total marital assets as approximately $30,000,000. Mr. Fingerman then awarded Husband 60% of the marital assets and Wife 40% of the marital assets. The trial court did not alter these percentages. It merely deducted the value of the GRAT shares from the marital property total because it found that the GRAT shares were not marital property. Wife's modified award still equaled 40% of the entire marital estate, which was the same portion of the marital estate that Attorney Fingerman originally awarded to her. Therefore, I would have found that the trial court's exclusion of the GRAT shares from the parties' marital property would not have affected the merits of Attorney Fingerman's arbitration award. Thus, as I believe that the trial court met the requirements of 42 Pa.C.S.A. § 7315(a), I would find that the trial court

had the power to modify the arbitration award.

¶ 6 Secondly, I disagree with the majority's finding that that the trial court erred in failing to award judgment interest from the date of the arbitration award. As I would find that the trial court's modified arbitration award was correct, I would find that the date from which Husband was required to make the first cash distribution was sixty days from January 31, 2003 (the date the trial court's order was docketed), as per the parties' collateral agreement.[5]

¶ 7 Because I would conclude that the interim agreement did not give Attorney Fingerman the power to decide the GRAT issue and an award modification would not affect the merits of Mr. Fingerman's decision, I would find that the trial court correctly modified the arbitration award.[6] In light of my belief, I would find that the date from which interest should be calculated was sixty days from January 31, 2003. Accordingly, I would remand the February 20, 2003 judgment and the July 11, 2003 divorce decree with instructions to modify the judgment and decree to show January 31, 2003, as the award date and to take any further necessary action in connection with said modification. Respectfully, I must dissent.

---

5. The trial court held that interest did not begin to accrue until it modified the arbitration award by its order of January 28, 2003. However, because the order was not docketed until January 31, 2003, January 31st, then, was the final determination date. *See* Pa. R.A.P. 108(b).

6. I would also find that Wife's second and third arguments fail because the trial court's modification did not affect the proportion of the equitable distribution and because the arbitrator's award was incorrect.