**THREE D DEPARTMENTS, INC., Plaintiff,**

v.

**K MART CORPORATION, Defendant.**

**No. 86 C 9948.**

United States District Court, N.D. Illinois, E.D.

March 7, 1990.

---

Ray H. Greenblatt, George V. Bobrinskoy, Jr., Mayer, Brown & Platt, Lawrence Gunnels, Thomas A. Gauza, for plaintiff.

Alexander, Unikel, Zalewa & Tenenbaum, Ltd., Mark Orloff, for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Three D Departments, Inc. and K Mart Corporation have filed cross-motions for summary judgment in their dispute over K Mart's termination of a license. The court described this dispute and Three D's initial allegations in *Three D Departments, Inc. v. K Mart Corp.*, 670 F.Supp. 1404 (N.D.Ill. 1987). Since that decision, Three D has reduced its complaint to two counts, although it alleges the same central facts as in *id.* This court has granted summary judgment in favor of K Mart on one count, leaving Three D with a claim for improper termination of its license.

■ The court's decision on the present motions turns to a great degree on the way the parties have not followed the local rules governing summary judgment proceedings. Local Rules 12(*l*)-(m) of this court state (emphasis added):

*l.* **Motions for Summary Judgment; Moving Party.** With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party *shall serve and file* ... a statement of material facts as to which the moving party contends there is no genuine issue.... That statement *shall* consist of short numbered paragraphs, including within *each* paragraph *specific references to affidavits, parts of the record, and other supporting materials* relied upon to support the facts set forth in that paragraph. *Failure to submit such a statement constitutes grounds for denial of the motion.*

m. **Motions for Summary Judgment; Opposing Party.** Each party opposing a Rule 56 motion *shall serve and file*— ... a concise response to the movant's statement. That response *shall* contain (1) a response to *each* numbered paragraph in the moving party's statement, *including, in case of any disagreement, specific references to the affidavits, parts of the*

*record, and other supporting materials relied upon,* and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, *including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.*

The parties have submitted statements purporting to comply with these rules, but most do not contain appropriate citations to the record.[1] This has forced the court to deny many aspects of the parties' motions, and thereby undermines the purpose of summary proceedings. A carefully prepared motion for summary judgment reveals to the parties the strengths and weaknesses of their respective positions. It further assists the court in narrowing the issues for trial. A poorly prepared motion for summary judgment wastes the parties' money and the court's time. The court hopes that other litigants will do better in their summary proceedings than both parties have here.

For the moment, the court will turn to Three D's motion for summary judgment. It is undisputed that on February 6, 1984, Three D and K Mart entered into a License Agreement. This agreement allowed Three D to operate its "Designer Depot" departments within several K Mart stores. Paragraphs 1(a) and 1(b) of the Agreement provided:

1. *TERM:*

(a) The License shall pertain only to the DESIGNER DEPOT store(s) listed on Exhibit B with respect to sale of bed, bath and related merchandise set forth on Exhibit A.... The individual term of the license for each store included in this Agreement shall commence as of the date of the first opening of the department at such store by [Three D] and shall terminate on the last day of the forty-eighth month subsequent to such opening unless terminated earlier in accordance with (b) through (f) below. Thereafter, the individual term for each store shall be extended on a month-to-month basis (subject to termination in accordance with (b) through (f) below).

(b) In the event K Mart shall elect to close any of the store(s) covered by this license, it may do so upon at least thirty (30) days prior notice to [Three D] and the individual license for such store shall terminate on the date of such closing.

Paragraph 23 of the Agreement provided that the License was to be governed by Michigan law.[2] It also stated that it constituted "the entire agreement between the parties and may not be modified or any provision waived, except in writing."

On or about November 7, 1986, K Mart advised Three D that it would close the Depots as of January 25, 1977. K Mart followed through on its decision.[3] Three D contends that this amounted to a breach of the Agreement, notwithstanding K Mart's greater-than-thirty-days notice to Three D of its decision. This is because, in Three D's opinion, the word "any" in ¶ 1(b) does not mean "any or all." According to Three D, ¶ 1(a) set the general term for the license, while ¶ 1(b) gave K Mart flexibility to terminate the license with respect to particular stores. Paragraph 1(b) did not give K Mart, however, the power to terminate the license with respect to all stores upon thirty-days notice, at least as Three D understood the contract. K Mart's motion

---

1. The only statement which complies with the Local Rules is K Mart's Local Rule 12(m) Statement, in opposition to Three D's motion for summary judgment. Curiously, in that statement K Mart faults Three D's Local Rule 12(*l*) Statement for the very problems which K Mart's Local Rule 12(*l*) Statement has.

2. This court held in *Three D,* 670 F.Supp. at 1407 & n. 1, that Michigan law applied to this case by reason of this provision.

3. This fact appears in K Mart's Local Rule 12(*l*) Statement, which K Mart failed to support with citations from the record. For this reason Three D denies it. The court will ignore this protest, however, since if K Mart did not close the Depots in January 1987, Three D could not claim damages for breach of contract.

for summary judgment suggests otherwise.

Three D says it deserves summary judgment regardless of which interpretation of the Agreement is the correct one. Three D contends that if it shows merely that the Agreement was ambiguous, it deserves the benefit of its construction, since Michigan law requires this court to construe an ambiguous clause against the party who drafted it. See, for example, *Powers v. Detroit Auto. Inter–Ins. Exchange*, 427 Mich. 602, 398 N.W.2d 411 (1986). In order to receive the benefit of this rule on its motion for summary judgment—were it a correct statement of the law [4]—Three D would have to establish that there is no genuine issue of fact as to who drafted the Agreement. Three D has not established this, as it did not comply with the Local Rules. Three D thus is not entitled to summary judgment on the issue of K Mart's liability for breach of contract.[5]

■ K Mart suggests in its motion for summary judgment that regardless whether it drafted the Agreement, it did not

breach it. In K Mart's opinion, the Agreement unambiguously allowed it to close all of the Designer Depots on thirty-days notice. Three D submits by contrast that as a matter of Michigan law, the word "any" is inherently ambiguous, and that this ambiguity renders all of ¶ 1(b) ambiguous. Three D rests its view on *In re Scheyer's Estate*, 336 Mich. 645, 59 N.W.2d 33 (1953). In that case, the Michigan Supreme Court had to interpret "any" in a will containing the phrase "any home belonging to me." The court stated that, standing alone, the word "any" is ambiguous, since it can mean "any one" or "all." The court did not hold, however, that when a party employs "any" in a contract, the clause in which "any" appears is automatically ambiguous. The court noted that one may resolve the ambiguity inherent in "any" " 'according to the subject which it qualifies.' " *Id.* at 36, quoting 3 C.J.S. 1398. Since "any" modified "home," a word which the court defined as being singular, the court determined that "any" meant "any one."

---

**4.** While older decisions such as *Lynch v. National Acceptance Co. of Chicago,* 329 Mich. 615, 46 N.W.2d 403 (1951), apply this rule strictly, later decisions have done so only where the contracts are ones of adhesion. See, for example, *Powers v. Detroit Auto. Inter–Ins. Exchange,* 427 Mich. 602, 398 N.W.2d 411 (1986) (auto insurance contract). In instances where the contract has not been of the "take-it-or-leave-it" variety, courts have employed the rule as only one of many tools of construction, and not given it the overwhelming force Three D desires here. See, for example, *Lichnovsky v. Ziebart Intern. Corp.,* 414 Mich. 228, 324 N.W.2d 732 (1982) (franchise contract; no implication that agreement was one of adhesion); *Central Jersey Dodge Truck Ctr. v. Sightseer Corp.,* 608 F.2d 1106 (6th Cir. 1979) (Michigan law) (dealership agreement with no implication of adhesion). Three D suggests that its contract with K Mart was one of adhesion, but because of its failure to comply with the Local Rules, Three D has not put undisputed facts before the court which would enable the court to rule that this was so.

**5.** Three D submits that it is also entitled to summary judgment because if K Mart's interpretation of ¶ 1(b) is the correct one, the License Agreement was unconscionable. At first glance this argument is unartful. Every authority which Three D has presented to the court demonstrates that under Michigan law, the doctrine of unconscionability allows a party only to *avoid* contractual provisions. See *Morris v. Me-*

*triyakool,* 418 Mich. 423, 344 N.W.2d 736 (1984) (plaintiff sought to avoid arbitration clause); *Northwest Acceptance Corp. v. Almont Gravel, Inc.,* 162 Mich.App. 294, 412 N.W.2d 719 (1987) (defendant escaped contractual liability); *Gianni Sport Ltd. v. Gantos, Inc.,* 151 Mich.App. 598, 391 N.W.2d 760 (1986) (allowing plaintiff to escape contract resulting from unconscionable clause in prior contract); *Latimer v. William Mueller & Son, Inc.,* 149 Mich.App. 620, 386 N.W.2d 618 (1986) (allowing plaintiff to avoid unconscionable contractual limit on damages); *Mallory v. Conida Warehouses, Inc.,* 134 Mich. App. 28, 350 N.W.2d 825 (1984) (same result); *St. Paul Fire, Etc. v. Guardian Alarm, Etc.,* 115 Mich.App. 278, 320 N.W.2d 244 (1982) (allowing plaintiff to avoid liquidated damages clause); *Reed v. Kaydon Engineering Corporation,* 38 Mich.App. 353, 196 N.W.2d 487 (1972) (allowing plaintiff to contest whether contractual limit on defendant's liability was unconscionable); *Allen v. Michigan Bell Tel. Co.,* 18 Mich.App. 632, 171 N.W.2d 689 (1969) (same result). Clearly Three D does not want to avoid the entire License Agreement. What Three D probably wants to argue is that since ¶ 1(b) is unconscionable, the court should ignore it and look instead to what would remain, ¶ 1(a). See note 4 above for why the court will not consider Three D's claim of unconscionability in ruling on Three D's motion for summary judgment.

Neither party has directed the court to Michigan decisions since *Scheyer's Estate* which have relied on it in interpreting "any." In *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971), the court set out to interpret "any" in a long-arm statute which employed the term "transaction of any business within the state." The court did not address *Scheyer's Estate*, holding instead that "any" includes "each" and "every," and "comprehends 'the slightest.'" In *Congregation B'nai Jacob v. City of Oak Park*, 102 Mich.App. 724, 302 N.W.2d 296 (1981), the court endeavored to construe "any" in a statute reading "any parsonage owned by any religious society." The court relied on definitions of "any" found in Webster's, Black's Law Dictionary, and a host of pre-*Scheyer's Estate* decisions in determining that any generally means more than one.

One can reconcile both of these decisions with *Scheyer's Estate*. The courts in each case found that the word which "any" modified—"business" in one, "parsonage" in the other—could be plural, and so "any" in each case meant "any or all; every." Because *Scheyer's Estate* presents a comprehensive discussion of the interpretation of "any" by Michigan's highest court, and as the Michigan courts have acted consistently with that decision, this court will rely on *Scheyer's Estate* to interpret "any" in ¶ 1(b). In that paragraph, "any" modifies "the store(s) covered by this License." "Store" is singular, but "stores" is plural, and the parties acknowledged the possibility of the License covering more than one store. The Agreement's use of "any" does not render ¶ 1(b) ambiguous.

■ Three D next argues that the language which follows "any of the store(s) covered by this License" creates a ambiguity in the contract.[6] Three D is correct. Paragraph 1(b) states that once K Mart gives notice of closing, "the individual license for such store shall terminate on the date of such closing." Unlike the clause

which preceded it, which expressly provided for closing of a "store" or "stores," this clause is strikingly particular: the *individual* (a singular term) license for such *store* (again, singular) terminates thirty days after notice. Had the parties intended the plural quality expressed in "store(s)" to continue throughout ¶ 1(b), they would not have used a singular term later—unless, of course, they did not intend a plural term originally.

The court is thus back where it was in 1987: what did the parties intend when they wrote ¶ 1(b)? The court hoped that it could answer this question short of trial, but apparently the facts—or is it the parties?—suggest otherwise. The court denies both motions for summary judgment on Count 1 of the Amended Complaint. The Clerk will set the matter for trial.

---

**6.** Three D raises this argument for the first time in its Reply Memorandum in support of its motion for summary judgment. Usually the court would ignore such an argument, as it deprives the other side of a response. Since the

parties' motions have not resulted in judgment for either side, however, the court will address this argument, so that the parties may consider it in future proceedings.