**Overfield v. Ohio Casualty Insurance Co.**

C.P. of Lackawanna County, no. 96-CV-5211.

*Michael J. Cefalo* and *Linda L. Bartlett,* for plaintiff.
*Richard G. Fine* and *Edward A. Monsky,* for defendant.

NEALON, *J.,* October 14, 1998—Defendant Ohio Casualty Insurance Company has appealed an underinsured motorist (UIM) arbitration award rendered on July 2, 1998, and has raised the following two issues of apparent first impression which have not yet been addressed by an appellate court in Pennsylvania. First, in an accident involving multiple plaintiffs who have amicably rationed the tort-feasor's liability insurance limits which were interpleaded into court, may the UIM insurer claim a credit for the tort-feasor's entire policy

limits rather than the distributive amount actually received by the plaintiff? Second, in an accident involving multiple potential tort-feasors with questionable or negligible liability, is the UIM carrier entitled to an offset for the liability limits of each tort-feasor's policy even if the plaintiff has not recovered damages from the marginally liable tort-feasor's insurer? For the reasons set forth below, and in order to effectuate the legislative intent of affording injured UIM claimants the greatest possible coverage, Ohio Casualty's appeal will be denied.

## I. FACTUAL BACKGROUND

This litigation arises out of an unusual and tragic accident which occurred on Route 81 North during the early morning hours of November 26, 1992. At that time, an automobile operated by Christopher Sturchio collided with a bridge guardrail and became disabled in the left lane of Route 81 North adjacent to the bridge. Shortly thereafter, a northbound vehicle operated by Lisa Overfield and containing Michael J. Bernstein and Cheryl L. Bridgman as passengers arrived upon the scene of the Sturchio collision and parked on the left shoulder of the roadway to offer assistance to Sturchio.

As Overfield, Bernstein and Bridgman were rendering aid to Sturchio and attempting to remove him from his automobile, they suddenly observed a northbound vehicle operated by Robert G. Masci as it was approaching at a purported high rate of speed. In an effort to avoid being struck by the oncoming Masci car, the three Samaritans leaped from the path of the Masci vehicle's travel as it simultaneously struck the Sturchio car. Although Bridgman landed on the bridge guardrail and sustained the least serious injuries, Overfield and Bernstein inadvertently jumped over the bridge railing

in attempting to elude the crash. As a result, Bernstein plunged more than 100 feet to his death on a rock bed below, while the more fortunate Overfield fell a shorter distance onto a hillside and survived, albeit with serious injuries. Additionally, Sturchio was thrown from his vehicle by the impact and was likewise killed.

Overfield, the estate of Bernstein, Bridgman, and the estate of Sturchio all presented liability claims against Masci. (See *Overfield v. Masci,* no. 93-CV-1152 (Lacka. Co.); *Estate of Bernstein v. Masci,* no. 94-CV-5601 (Lacka. Co.); *Bridgman v. Masci,* no. 94-CV-5600 (Lacka. Co.); *Estate of Sturchio v. Masci,* no. 94-CV-5070 (Lacka. Co.).) At the time of this fatal accident, Masci was insured with Aetna Casualty & Surety Company pursuant to an automobile liability insurance policy which afforded single limit coverage of $100,000. In light of the aggregate magnitude of the claims, Aetna filed a petition for interpleader to pay its policy limit proceeds into court in accordance with Pa.R.C.P. 2031 et seq., and by order dated December 7, 1993, President Judge James J. Walsh granted Aetna's requested relief.

Overfield, the estate of Bernstein, Bridgman, and the estate of Sturchio eventually filed a "motion for distribution of funds" confirming that those parties had "agreed, after consideration of the availability of underinsurance coverage, to the distribution of the $100,000." (See *Overfield v. Masci, supra,* docket entry no. 16, ¶8.) Prior to entering into that agreement regarding the apportionment of the Masci funds, Overfield secured the written consent to settle from her own UIM carrier, Erie Insurance Company, as well as her father's UIM insurer, Ohio Casualty. Specifically, by letter dated October 6, 1994, counsel for Ohio Casualty advised Overfield that "[a]fter reviewing the facts of this case, concluding our investigation, and researching the legal

issues involved, the Ohio Casualty Group will give permission to settle the claim against the tort-feasor, Robert G. Masci." (See plaintiff's brief, exhibit 1.) Consequently, on July 18, 1995, Judge Carlon M. O'Malley Jr. entered an order approving the parties' jointly submitted motion and authorizing the distribution of the interpleaded proceeds in the following manner: Overfield—$2,500; estate of Bernstein—$48,250; Bridgman—$1,000; and estate of Sturchio—$48,250. See *Overfeld v. Masci, supra,* docket entry no. 16 (Lackawanna County).[1]

Based upon her receipt of the UIM insurers' written consent, Overfield executed a joint tort-feasor release with Masci and Aetna in connection with the settlement of the interpleader action. The Overfield-Masci/Aetna release expressly states that it is "executed and delivered

---

1. Prior to the filing of the petition for interpleader, Masci had joined the estate of Sturchio as an additional defendant in *Overfield v. Masci* by the filing of a third party complaint. (See petition for interpleader, ¶3.) Bridgman and the estate of Bernstein voluntarily dismissed their claims against all named parties, including Sturchio's estate, by the filing of a praecipe to discontinue on March 21, 1996. (*Id.,* docket entry no. 17.) However, Overfield has never discontinued that pending litigation as to the Sturchio estate which was joined as an additional defendant within the original statute of limitations. Hence, Ohio Casualty asserts that the arbitrators erred by not staying the UIM proceeding until after Overfield had litigated her liability claim against Sturchio. (See Ohio Casualty's petition, p. 8, ¶21(g).) Ohio Casualty's contention is devoid of arguable merit inasmuch as the fact that Overfield has not yet resolved or adjudicated her potential liability claim against Sturchio's estate did not bar her from proceeding forward with UIM arbitration. *Rocca v. Pennsylvania General Insurance Co.,* 358 Pa. Super. 67, 73-74, 516 A.2d 772, 775-76 (1986), *alloc. denied,* 517 Pa. 593, 535 A.2d 83 (1987). Furthermore, the arbitrators did permit Ohio Casualty to litigate the issue of Sturchio's liability at the time of the UIM proceeding,

in accordance with the 'Uniform Contribution Among Joint Tort-feasors Act.' " (See plaintiff's brief, exhibit 2, pp. 2-3.) The pro rata language of the Overfield-Masci/Aetna release extinguished the joint and several liability of the other potential tort-feasor, Sturchio, for the full amount of Overfield's putative recovery from the responsible parties. See *Walton v. Avco Corp.,* 530 Pa. 568, 610 A.2d 454 (1992); *Charles v. Giant Eagle Markets,* 513 Pa. 474, 522 A.2d 1 (1987). Following the execution of that release, Sturchio could only be held accountable for his percentage or proportionate share of Overfield's total damages. See 42 Pa.C.S. §§7102, 8326.

Overfield thereafter proceeded forward with her UIM claim against Erie which was the primary UIM carrier under section 1733(a) of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S., and Erie ultimately agreed to tender its policy limits of $100,000 for settlement of Overfield's UIM claim. Before accepting Erie's offer, counsel for Overfield solicited Ohio Casualty's consent to settle by forwarding a letter dated September 25, 1995 which stated:

"As discussed, our office has resolved the above-captioned underinsurance claim for Erie Insurance's policy limits of $100,000. Enclosed is a copy of the declaration page evidencing the limits of $100,000 and a copy of the release in the amount of $100,000.

"At this time, we would like to pursue a claim for underinsurance benefits under Mr. Overfield's Ohio Casualty policy. Although the policy does not state that we need your permission to sign the release and accept the primary underinsured's coverage, we are asking you to confirm in writing with the Ohio Casualty that it does not object to our resolving the primary underinsurance monies. Kind advise our office within the

next seven days whether we may do so. If not, we will wait the 30 days and petition Ohio Casualty to pay the sum to our client as if this were a tort-feasor recovery with no consent to settle." (*Id.,* exhibit 3.)

In response, counsel for Ohio Casualty informed Overfield's attorney that Ohio Casualty's consent was unnecessary in that the UIM policy terms did not require consent to settle with a primary UIM carrier. (*Id.,* p. 2.) Based upon that representation, Overfield executed a UIM "release and agreement" with Erie on September 30, 1995. (*Id.,* exhibit 4.)

After obtaining $102,500 in total recovery from the Masci liability insurer (Aetna) and the primary UIM carrier (Erie), Overfield formally demanded UIM benefits from Ohio Casualty as the UIM insurer for her father, Joseph P. Overfield, with whom she resided at the time of the accident. Ohio Casualty's policy provided non-stacked UIM coverage totaling $200,000 and included language stating "[w]e will pay damages under this coverage arising out of an accident with an underinsured motor vehicle only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." (See Ohio Casualty's petition to vacate, modify or correct arbitration award, exhibit A.) The Ohio Casualty policy further provided that in the event that Overfield and Ohio Casualty could not agree as to her legal entitlement to recover damages or the amount of damages, the dispute(s) would be arbitrated "in accordance with the provisions of the Pennsylvania Uniform Arbitration Act." (*Id.*)

On July 2, 1998, the parties conducted an arbitration hearing at which time Ohio Casualty offered the testimony of an eyewitness who claimed that the Sturchio vehicle was traveling at a high rate of speed prior to

its collision with the bridge guardrail. (See Ohio Casualty's petition, ¶13; Overfield's response, ¶13.) Ohio Casualty further argued that Sturchio was jointly and severally responsible for Overfield's damages, and that as such, Ohio Casualty should be entitled to a $100,000 credit reflecting Sturchio's liability limits with Progessive Insurance Company. (*Id.,* ¶¶10, 16, 18-20.) At the conclusion of the arbitration hearing, a majority of the arbitration panel issued a written award which stated:

"The board of arbitrators hereby renders an award in favor of the plaintiff, Lisa Overfield Townsend, in the sum of $77,500.

"This award has already taken into account all credits which the arbitrators believe to be appropriate and the award is a net award." (*Id.,* exhibit B.)

The majority award was rendered by the neutral arbitrator and the arbitrator chosen by Ohio Casualty, with Overfield's designated arbitrator dissenting. *(Id.)*

Overfield and Ohio Casualty agree that although the arbitration award "was not supported by any written opinion setting forth its findings and conclusions," the panel "verbally informed" the litigants that it had found Sturchio to be 10 percent causally negligent and had calculated Overfield's total damages, "without reduction for applicable credits," as having "a value of $200,000." (*Id.,* ¶¶12, 15.) The parties have stipulated that the arbitration panel computed its award as follows:

| | |
|---|---|
| Overfield's total damages | $200,000 |
| Credit for payment received from Masci liability insurer (Aetna) | - 2,500 |
| UIM policy limits payment from Erie | -100,000 |
| Sturchio's 10 percent share of the total damages of $200,000 | - 20,000 |
| Net award | $ 77,500 |

(*Id.,* ¶15.)

On July 30, 1998, Ohio Casualty timely filed a petition to vacate, modify or correct the arbitration award pursuant to 42 Pa.C.S. §§7314 and 7315.[2] Ohio Casualty asserts that the arbitrators exceeded their powers and/or committed an evident miscalculation of figures which rendered the award deficient in form. (*Id.,* ¶21.) The gravamen of Ohio Casualty's appeal is that the award must be vacated, modified or corrected since the arbitration panel (1) did not apply a credit for the full amount of the Masci liability policy limits of $100,000 and (2) declined "to provide a credit of $100,000 to [Ohio Casualty] for the policy limits for the Sturchio vehicle [even though] the arbitrators found that Sturchio was jointly liable as a tort-feasor with Masci and both joint tort-feasors are jointly and severally liable for the amount of [Overfield's] damages or award." (*Id.,* ¶21(d).)

According to Ohio Casualty's proffered calculations, the arbitration award should have been computed in the following manner:

| | |
|---|---|
| Overfield's total damages | $200,000 |
| Masci's total liability coverage (Aetna) | - 100,000 |
| UIM policy limits payment from Erie | - 100,000 |
| Sturchio's total liability coverage | - 100,000 |
| Net award | - 0 - |

(See Ohio Casualty's brief, pp. 9, 11-12.) Ohio Casualty submits that if the arbitration panel had offset the foregoing credits totaling $300,000 against Overfield's

2. The above-captioned litigation was originally commenced by Overfield on October 25, 1996, in an effort to compel Ohio Casualty to arbitrate this UIM claim. That action was never discontinued by either party and, rather than institute a new proceeding, Ohio Casualty filed the petition in this pending matter which had been docketed to 96-CV-5211 (Lacka. Co.).

damages of $200,000, Overfield would not be entitled to recover any UIM proceeds from Ohio Casualty.

## II. DISCUSSION

### (A) *Scope of Review*

The standard of review applicable to the instant UIM arbitration appeal is dependent upon whether the arbitration proceeding was conducted pursuant to common-law arbitration, the Pennsylvania Arbitration Act of 1927, or the Pennsylvania Uniform Arbitration Act of 1980. Ohio Casualty's policy provides for UIM arbitration "in accordance with the provisions of the Pennsylvania Uniform Arbitration Act." (See Ohio Casualty's petition, exhibit A.) By virtue of that policy language, the present appeal is governed by the provisions of the Pennsylvania Uniform Arbitration Act of 1980, rather than the Pennsylvania Arbitration Act of 1927. *MGA Insurance Co. v. Bakos,* 699 A.2d 751, 753 n.4 (Pa. Super. 1997) (1927 Act only applies if the agreement to arbitrate was made prior to December 4, 1980 or the policy language expressly provides for arbitration under the 1927 Act); *Cotterman v. Allstate Insurance Co.,* 446 Pa. Super. 202, 210, 666 A.2d 695, 699 (1995) (where the policy merely states that the Pennsylvania Uniform Arbitration Act governs, without any mention of either the 1927 or 1980 Acts, the provisions of the 1980 Act control); *Cigna Insurance Co. v. Squires,* 427 Pa. Super. 206, 209, 628 A.2d 899, 900 (1993), *alloc. denied,* 537 Pa. 638, 644 A.2d 161 (1994) (same).

The scope of review under the 1980 Act is more narrow than that set forth in the 1927 Act, but broader than the common-law arbitration standard. *Bakos,* 699 A.2d at 753; *Patton v. J.C. Penney Insurance Co.,* 445 Pa. Super. 317, 321-22, 655 A.2d 510, 512 (1995).

A common-law arbitration award may not be vacated or modified under 42 Pa.C.S. §7341 "unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." *Prudential Property & Casualty Insurance Co. v. Stein,* 453 Pa. Super. 227, 230, 683 A.2d 683, 684 (1996). In contrast, a statutory arbitration award may be modified or corrected under the 1927 Act "where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment n.o.v." 42 Pa.C.S. §7302(d)(2). *Cotterman, supra* at 208, 666 A.2d at 698.

A UIM award may be vacated under the 1980 Act if, inter alia, the award would be annulled under the common-law arbitration standard or the arbitrators exceeded their powers. 42 Pa.C.S. §§7314(a)(1)(i), (iii). *Bakos,* 699 A.2d at 753. The 1980 Act further provides that an arbitration award may be modified or corrected where there was an evident miscalculation of figures or the award is deficient in a matter of form which does not affect the merits of the controversy. 42 Pa.C.S. §§7315(a)(1), (3). *Cotterman, supra* at 209-210, 666 A.2d at 698-99. However, unlike the 1927 Act standard of review, "an allegation that a statutory arbitration award [under the 1980 Act] is contrary to law is not a sufficient basis for vacating the award." *Caron v. Reliance Insurance Co.,* 703 A.2d 63, 66 (Pa. Super. 1997) (quoting *Martin v. PMA Group,* 420 Pa. Super. 624, 629-30, 617 A.2d 361, 363 (1992)).

Ohio Casualty contends that the UIM award should be vacated, modified or corrected since the arbitrators did not utilize the credits that Ohio Casualty proposed with regard to the liability of Masci and Sturchio. At best, Ohio Casualty's arguments concern purported er-

rors of law which cannot serve as a basis for disturbing an arbitration award under the 1980 Act. However, although Ohio Casualty's appeal could be denied summarily for that reason, the issues raised in the petition warrant further discussion.

## (B) *The* Boyle *Solution*

Citing *Boyle v. Erie Insurance Co.,* 441 Pa. Super. 103, 656 A.2d 941 (1995), *alloc. denied,* 542 Pa. 655, 668 A.2d 1120 (1995), Ohio Casualty claims that "[t]he arbitrators erred, or in the alternative, made an evident miscalculation or mistake in failing to provide a credit to [Ohio Casualty] for the policy limits of *both* responsible vehicles, the Sturchio vehicle ($100,000) and the Masci vehicle ($100,000), because Pennsylvania law clearly holds that a UIM carrier is entitled to a credit for the *entire* amount of the liability coverage of the responsible vehicles involved in the accident." (See Ohio Casualty's brief, p. 9.) (emphasis in original) Relying upon *Kester v. Erie Insurance Exchange,* 399 Pa. Super. 206, 582 A.2d 17 (1990), *alloc. denied,* 527 Pa. 624, 592 A.2d 45 (1991), Overfield counters that "[b]ased on *Kester,* Overfield was not required to pursue each and every potential tort-feasor before pursuing a claim for underinsurance." (See Overfield's brief, p. 7.) The court concludes that neither the *Boyle* nor the *Kester* rationale is particularly well suited to UIM claims concerning multiple plaintiffs and interpleaded liability insurance funds or accidents involving several motorists, only one of whom is almost exclusively liable.

In *Kester,* the insureds sought UIM benefits after they had exhausted the negligent motorist's liability limits. The UIM carrier denied coverage based upon policy language which did not obligate the insurer to pay UIM benefits "until all other forms of insurance

applicable at the time of the accident have been exhausted," including "motor vehicle liability insurance," "any other liability insurance," and "self-insurance plans, which include bonds, securities or cash deposits." *Id.* at 210-11, 582 A.2d at 20. In that regard, the UIM insurer refused to pay the insured's claim based upon "the theoretical liability of PennDOT for failure to maintain the roadbed." *Id.* at 211, 582 A.2d at 20. In finding that the UIM clause requiring exhaustion of non-automobile insurance policies was "contrary to public policy as expressed in the underinsured motorist statute," the Superior Court concluded that "only owners or operators of motor vehicles are included within the circle of those liable under the underinsurance procedure." *Id.* at 213, 582 A.2d at 21. Contrary to Overfield's contention, however, *Kester* is not controlling in the case sub judice since its holding is limited to exhaustion of and credits for non-motor vehicle liability insurance policies.

Although *Boyle* is more applicable than *Kester,* it likewise is not dispositive of the issues presented in this appeal. In that case, the insureds had resolved their liability claim against one of the tort-feasors for an amount less than the policy limits they could have recovered, and, as a result, the UIM insurer declined to afford coverage on the grounds that the insureds had not exhausted the available liability coverage. In attempting to fashion an approach which fairly protected the competing interests of the insured and insurer, the *Boyle* court remarked:

"Thus, when the insureds settled their claim against the tort-feasor's liability carrier for less than policy limits, the underinsured motorist carrier was entitled to compute its payment to its injured insureds as though the tort-feasor's policy limits had been paid." *Id.* at 109, 656 A.2d at 943.

Stated another way, if the injured party accepts less than the tort-feasor's full policy limits, the UIM insurer will "be allowed to credit the full amounts of the tort-feasors' liability coverages against the insureds' damages." *Id.* at 109, 656 A.2d at 944.

Armed with *Boyle's* formulation, Ohio Casualty maintains that it is entitled to a credit for Masci's liability limits of $100,000. However, the *Boyle* procedure is only workable and equitable in those instances in which the UIM claimant could have potentially exhausted the tort-feasor's liability coverage. Subsequent appellate court rulings have followed *Boyle* solely in the context of an individual plaintiff's failure to exhaust a tort-feasor's liability limits. See *e.g., Chambers v. Aetna Casualty & Surety Co.,* 442 Pa. Super. 155, 658 A.2d 1346 (1995), *alloc. denied,* 543 Pa. 707, 672 A.2d 303 (1996) (single plaintiff accepted 91 percent of defendant's coverage); *Kelly v. State Farm Insurance Co.,* 447 Pa. Super. 214, 668 A.2d 1154 (1995) (insured accepted $12,500 from a defendant who had $50,000 in liability insurance); *Sorber v. American Motorists Insurance Co.,* 451 Pa. Super. 507, 680 A.2d 881 (1996) (insured accepted $40,000 from a $50,000 policy). The *Boyle* ruling does not accurately reflect the realities present in a multiple plaintiff scenario in which a tort-feasor's liability limits have been interpleaded into court to be apportioned among the claimants.

### (C) *Masci Liability Credit*

In *Boyle, Chambers, Kelly* and *Sorber,* the liability insurers had *not* tendered or paid their policy limits and, consequently, the UIM carriers could legitimately maintain that the tort-feasors in those cases were not truly "underinsured" or, alternatively, that the full policy limits should have been offset against the UIM award.

In contrast, Masci's liability insurance carrier did, in fact, interplead its entire liability limits into court, thereby acknowledging that Masci was operating an "underinsured motor vehicle" as defined by 75 Pa.C.S. §1702. Thus, the public policy considerations which justify the application of a full liability limits credit under *Boyle* simply do not exist in cases involving multiple plaintiffs who must parcel liability limits that have been exhausted.

As a practical matter, Overfield could have exclusively exhausted Masci's liability limits only if the injured parties litigated their claims against the interpleaded fund and the fact-finder determined that two deaths (Bernstein and Sturchio) and another injury (Bridgman) had absolutely no monetary value. No judge or jury could possibly arrive at such a conclusion and thereby award Overfield the entire policy limits. The *Boyle* offset procedure does have relevance with regard to a single claimant; for example, Ohio Casualty should be entitled to assert a credit for the full UIM limits of Erie's policy since Overfield was the sole claimant against that fund and was fully capable of exhausting those limits. However, she simply did not have a realistic ability to procure Masci's liability limits, and for that reason, the *Boyle* method has no application instantly.

The offset approach currently being advocated by Ohio Casualty arguably violates several tenets of Pennsylvania public policy. For instance, in an effort to avoid a credit for the full liability limits, the injured parties would be compelled to litigate the interpleader action to a conclusion in the hope of receiving most, if not all, of the available funds. Such a practice would foster unnecessary, time-consuming trials which would increase the burden on the courts and would discourage

the facilitation of prompt, inexpensive settlements. As the *Boyle* court cautioned:

"In some cases it may prevent an injured insured from accepting a reasonable, third party settlement and require that the third party litigation be pursued to final judgment. This would delay recovery when prompt payment was needed, would lessen the insured's recovery by requiring him or her to pay additional costs, and would unnecessarily burden the judicial system. 'Where the best settlement available is less than the [tort-feasor's] liability limits, the insured should not be forced to forego settlement and go to trial in order to determine the issue of damages.'" *Boyle, supra* at 108, 656 A.2d at 943. (citation omitted)

In the case at bar, the "best settlement available" for Overfield was the apportionment of Masci's *full* liability limits, and under no circumstances could Overfield have secured those limits solely for herself.

More importantly, Ohio Casualty's theory is contrary to the MVFRL's intent of providing UIM claimants with the maximum recovery available. The underlying objective of the MVFRL has always been to furnish broad coverage to assure the financial integrity of the policyholder. *Danko v. Erie Insurance Exchange,* 428 Pa. Super. 223, 229, 630 A.2d 1219, 1222 (1993), *aff'd,* 538 Pa. 572, 649 A.2d 935 (1994). For that reason, the provisions of the MVFRL are to be liberally construed to advance the policy of indemnifying victims of accidents for injuries suffered on Pennsylvania highways. *Hames v. Philadelphia Housing Authority,* 696 A.2d 880, 882 (Pa. Commw. 1997); *Allwein v. Donegal Mutual Insurance Co.,* 448 Pa. Super. 364, 377, 671 A.2d 744, 751 (1996) (en banc), *alloc. denied,* 546 Pa. 660, 685 A.2d 541 (1996) (holding that the MVFRL requires excess, rather than gap, UIM coverage).

In the context of underinsurance coverage, the Pennsylvania appellate courts have specifically recognized that one of the objects of the MVFRL is to afford the injured claimant the greatest possible UIM coverage. *Allwein, supra* at 376, 671 A.2d at 750; *Motorists Insurance Co. v. Emig,* 444 Pa. Super. 524, 538, 664 A.2d 559, 566 (1995). Although the 1990 amendments to section 1731(a) of the MVFRL changed UIM coverage from a compulsory provision to a mandatory offering, those revisions did not alter the public policy evident in the MVFRL, namely, furnishing the maximum possible coverage to UIM claimants. *Allwein, supra* at 387, 671 A.2d at 756. Therefore, in close or doubtful UIM cases, courts must interpret the intent of the legislature and the language of the insurance policies to favor such coverage for the insured. *Allwein, supra* at 376, 671 A.2d at 751; *Emig, supra.*

Ohio Casualty's proposed measure undercompensates UIM claimants by employing an artificial credit and affording the least possible coverage to insureds. Such a methodology would contravene the legislative intent of the MVFRL and the compensatory purpose of underinsurance. Moreover, under such a strained interpretation of *Boyle,* an injured party would fare better financially if [s]he was injured by a wholly irresponsible and uninsured motorist than by one who is fortuitously underinsured because of the existence of multiple claimants. If Masci had been uninsured, there would be no credit for liability coverage and Overfield would collect her full damages from the UM insurer(s). Since one of the stated goals of the MVFRL and its amendments is to mitigate the impact that uninsured motorists have upon increasing automobile insurance rates, see *Wind-*

*rim v. Nationwide Insurance Co.,* 537 Pa. 129, 136, 641 A.2d 1154, 1158 (1994); *Lambert v. McClure,* 407 Pa. Super. 257, 262, 595 A.2d 629, 631 (1991), such an illogical result would frustrate that legislative intent by providing greater remuneration for UM claimants.

Despite the absence of any Pennsylvania case law concerning this particular issue, an oft cited treatise on automobile insurance, see *e.g., Allwein, supra* at 372, 671 A.2d at 748-49, has analyzed the inapplicability of the *Boyle* rule to accidents involving multiple plaintiffs and concluded:

"In an accident where there are two or more injured plaintiffs, each plaintiff will receive only a fraction of the tort-feasor's limits, because the liability coverage must be divided among the injured plaintiffs. . . .

"As in the situation where the plaintiff settles for less than the tort-feasor's liability limits, the courts must recognize that the plaintiff's acceptance of a settlement for less than the tort-feasor's policy limits is unlikely to reflect the factual circumstances surrounding the acceptance.

"In the multiple plaintiff situation, the extent to which the tort-feasor's limits were exhausted is not reflective of what the plaintiff received; therefore, the procedure approved in *Boyle* is not an appropriate solution to the policy's exhaustion-of-limits provision. To enforce the policy language strictly would have the effect of failing to provide the protection intended by the legislature for an insured driver.

"The purpose of the underinsured motorist sections of the Financial Responsibility Law is to make certain that, up to the insured's level of damages, his or her recovery is not to be bound by the fortuity of the level of the tort-feasor's coverage. Therefore, the plaintiff's

recovery also should not be bound by the fortuity of the number of plaintiffs. The insurer should set off only the amount actually received by the insured from the tort-feasor, and otherwise fulfill its statutorily mandated function of making the insured whole." Ronca, J.R.; Sloane, L.A.; Lutz, D.L.; Shollenberger, T.A.; and Mundy, J.F., *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law,* §11.4, pp. 175-76 (2nd ed. 1998). (footnotes omitted)

Conscious of the intent of the MVFRL and the purpose of UIM coverage, the court concludes that the most equitable and judicious approach to automobile accident claims involving multiple plaintiffs who have allocated a tort-feasor's policy limits is to permit the UIM insurer to assert a credit only for the liability insurance proceeds actually received by the claimant rather than the tort-feasor's policy limits. Such a method has been adopted by well-reasoned rulings from other jurisdictions which have considered this narrow issue. See *Motorists Mutual Insurance Co. v. Andrews,* 65 Ohio St. 3d 362, 366-67, 604 N.E.2d 142, 146 (1992) (in UIM situation implicating several claimants, the relevant consideration is the amount actually available for payment, not the tort-feasor's policy limits); *Francis v. Travelers Insurance Co.,* 581 So.2d 1036, 1043 (La. App. 1st Cir. 1991) ("[a]ny credit reducing the underinsured motorist limits by the entire amount of the liability insurance of the tort-feasor (regardless of the fact that plaintiffs only received a portion thereof), . . ., would not be in conformity with the intent and purpose of the UM statute which is designed to allow full compensation for the entire extent of insureds' damages"); *Gonzales v. Millers Casualty Insurance Co. of Texas,* 923 F.2d

1417, 1422 (10th Cir. 1991) ("[i]n a multiple claimant situation like this one, a tort-feasor's liability coverage may well be inadequate to compensate each injured insured. . . . [Under New Mexico law], the measure of a tort-feasor's liability coverage is the amount of liability proceeds actually available to an injured insured, rather than the face amount of the tort-feasor's policy."); *Goughan v. Rutgers Casualty Insurance Co.,* 238 N.J. Super. 644, 649, 570 A.2d 501, 503 (1989) (In a multiple plaintiff scenario, "[i]t would be unfair and an abuse of the statutory policy to permit a deduction by the UIM carrier of the full limits of the tort-feasor's policy when those limits are not available to its insured. It is the amount which can be recovered (the full *available* policy limit) by the UIM insured from the tort-feasor's insurer which is to be deducted from the amount of the UIM coverage."); *Gust v. Otto,* 433 N.W.2d 286 (Wis. App. 1988) (UIM recovery was to be reduced by the amount actually paid rather than the entire amount of the liability limits since the claimant could only receive a portion of the liability proceeds due to the existence of several claimants); *American General Fire & Casualty Co. v. Oestreich,* 617 S.W.2d 833, 835 (Tex. Civ. App. 1981) (UIM carrier is entitled to a credit only for the amount that the claimant actually received from the liability insurer); *State Farm Mutual Automobile Insurance Co. v. Diem,* 358 So.2d 39, 41 (Fla. Dist. Ct. App. 1978) ("[c]ontrary to State Farm's position herein, available benefits under the statute do not constitute the policy limits of the underinsured's liability policy where, as here, the benefits under such policy have been partially exhausted by payment of

claims to persons other than the insured. (citation omitted) Available benefits must mean that which is actually available to the insured herein from the underinsured's liability carrier."); *Palisbo v. Hawaiian Insurance & Guaranty Co. Ltd.,* 547 P.2d 1350, 1355 (Hawaii 1976) (where a tort-feasor is underinsured as to a particular policyholder of UIM insurance, the latter is entitled to recover under his policy based upon the amount he actually received from the tort-feasor's insurance).

While it is true that UIM coverage is "not intended to permit the insured absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tort-feasor's liability carrier," *Boyle, supra* at 108, 656 A.2d at 943, Ohio Casualty did, in fact, provide Overfield with its written consent to settle with Masci's insurer for $2,500. It is disingenuous for Ohio Casualty to agree to the proposed distribution among the four claimants and thereafter seek to assert a credit for the full liability limits. Ohio Casualty was at liberty to assert during the UIM proceeding that Overfield should have recovered more from Masci's insurer and that a higher offset should be applied, but after considering those arguments, the arbitrators rejected Ohio Casualty's contentions in exercising their sound discretion. See *Snyder v. Nationwide Mutual Insurance Co.,* 373 Pa. Super. 294, 297-98, 541 A.2d 19, 20 (1988), *appeal denied,* 520 Pa. 590, 551 A.2d 216 (1988) (exhaustion and setoff issues may only be determined by the UIM arbitrators). Consequently, based upon the foregoing, the arbitrators did not err by deducting from the gross award the amount that Overfield actually received from the

interpleaded funds rather than Masci's total liability limits.

### (D) *Sturchio Liability Credit*

The *Boyle* holding has greater significance with regard to Ohio Casualty's second argument that the arbitration panel exceeded its powers and evidently miscalculated figures by declining to apply a credit for the full amount of Sturchio's liability policy. Ohio Casualty relies upon late Judge Wieand's directive that "the insureds will not be allowed underinsured motorist benefits unless their damages exceed the maximum liability coverage provided by the liability carriers of the other drivers involved in the accident; and their insurers will, in any event, be allowed to credit the full amounts of the tort-feasor's liability coverages against the insured's damages." *Boyle, supra* at 109, 656 A.2d at 943-44.

In *Boyle,* the policy language did not obligate the UIM insurer to pay benefits "until the limits under *all* bodily injury insurance policies and liability bonds applicable at the time of the accident" had been exhausted. *Id.* at 106, 656 A.2d at 942. (emphasis added) See also, *Kelly, supra* at 216, 668 A.2d at 1155 (UIM policy mandated exhaustion of "all" liability policies). In contrast, Ohio Casualty's policy requires it to provide UIM benefits for damages "arising out of *an* accident with *an* underinsured motor vehicle only after the limits of liability under *any* applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." (See Ohio Casualty's petition, exhibit A, p. 5.) (emphasis added) The phrase "an underinsured motor vehicle" clearly refers to one, individual vehicle; similarly, the word "any" typically has a singular connotation and is frequently interpreted

as meaning "any one" rather than "every" or more than one. See *e.g., Three D Departments Inc. v. K-Mart Corp.,* 732 F. Supp. 901, 904 (N.D. Ill. 1990). Although no Pennsylvania appellate court has considered this particular issue, one trial court has interpreted an identical policy provision.

In *Werntz v. General Accident Insurance Co.,* 1 D.&C.4th 386 (Lanc. Co. 1988), *appeal dismissed,* 393 Pa. Super. 649, 564 A.2d 1014 (1989), the insured filed a personal injury action against two tort-feasors, but after settling with the primarily liable defendant for her policy limits, the insured demanded UIM arbitration. The arbitrators found that the foregoing policy language obligated the insured to exhaust his liability claim against the non-settling tort-feasor as a condition precedent to UIM coverage. *Id.* at 388. In reversing the arbitrators' decision, the *Werntz* court concluded:

"The language of the clause in question is clear. The insured must exhaust any applicable bodily injury liability bonds or policies arising from *an* accident with *an* underinsured motor vehicle. Stated another way, if an insured has exhausted all of one uninsured motor vehicle's coverage, the insured may recover benefits from the insured's own underinsurance policy.

"The clause does not state that an insured may recover '[o]nly after the limits of liability under any applicable bodily injury bonds or policies which insure *any and all parties to an accident* have been exhausted by payment of judgments or settlements.' If General Accident had wanted an insured to exhaust any and all policies of parties to an accident, General Accident would or should have included the italicized phrase or a similar phrase in its policy language. Since it did not, this court assumes it intended to be bound by the existing policy language." *Id.* at 390. (emphasis in original)

(footnote omitted)[3] Cf. *Garofalo Estate v. Aetna Casualty & Surety Co.,* 71 Lanc. L. Rev. 265, 269 (1988) ("[i]n *Hoffman [v. Shelby Mutual Insurance Co.,* 10 Carbon Co. L.J. 55 (1986)], the court required the injured party to exhaust any claims it had against all insured tort-feasors [because] . . . the policy language at issue in *Hoffman* contained an express requirement of exhaustion while the policy language in the instant case is ambiguous at best, calling for neither exhaustion nor apportionment.").

Since the Ohio Casualty policy requires a claimant to exhaust "any" liability policy applicable to "an" underinsured vehicle, the plain language of the insurance contract that Ohio Casualty drafted does not enable it to assert an offset for the full amount of all potential tort-feasors' liability limits. If the court were to nevertheless construe the Ohio Casualty policy as requiring exhaustion and credits for every theoretical liability policy, see *e.g., Fleck v. KDI Sylvan Pools Inc.,* 981 F.2d 107, 115 (3d Cir. 1992) ("the word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive"); *In re Belefski's Estate,* 413 Pa. 365, 375, 196 A.2d 850, 855 (1964) (same), such an interpretation would arguably be void as against public policy. As the *Boyle* court noted, the purpose of UIM coverage is "to protect an insured driver from the risk that a negligent driver of another vehicle would cause injury to the insured but would not have adequate coverage to compensate for the insured's injuries." *Boyle, supra* at 106, 656 A.2d at 942. In declaring

---

3. Although the *Werntz* decision indicates that the UIM proceeding was governed by the Uniform Arbitration Act of 1980, the court erroneously utilized the contrary-to-law/judgment n.o.v. standard applicable to arbitration conducted pursuant to the 1927 Act. *Id.* at 388-89.

the UIM exhaustion provisions in *Kester* void as contrary to public policy, the Superior Court reasoned:

"The clause contained in appellant's policy expands the field of those liable to include anyone from whom recovery for appellants' injuries might be imagined possible. Given the breadth of the exhaustion clause, these imaginings apparently need have no factual underpinning, nor any real relation to the purpose of underinsured motorist coverage." *Kester, supra* at 213, 582 A.2d at 21.

To entitle a UIM insurer to claim a credit for every ethereal liability policy, regardless of the legitimacy of the tort-feasor's responsibility, would render UIM coverage illusory and frustrate the goal of underinsurance in seeking to place claimants in the same financial position they would have enjoyed if the tort-feasor had been fully insured for the multiple claims. Liability limits should be considered "applicable" under the Ohio Casualty policy only if they relate to a tort-feasor with bona fide liability for the accident. Indeed, the unambiguous language of the Ohio Casualty policy permits it to reduce its UIM payment only by any amounts paid "by or on behalf of persons or organizations who may be legally responsible." (See Ohio Casualty's petition, exhibit A, p. 6.) As a well-recognized authority on automobile insurance has remarked, "[c]ertainly, in a case involving multiple defendants with questionable liability, to require an injured insured to pursue every policy while giving the underinsured carrier full credit for each policy would also have the effect of failing to provide the protection intended by our legislature." Ronca, *Pennsylvania Motor Vehicle Insurance: An*

*Analysis of the Financial Responsibility Law,* section 10.7, p. 166 (2nd ed. 1998).

Most jurisdictions which have considered this question have concluded that UIM carriers are not entitled to seek a credit for the liability limits of all hypothetical tort-feasors. See *Hall v. Burger,* 277 Ill. App. 3d 757, 214 Ill. Dec. 379, 660 N.E.2d 1328, 1334 (1996) (refusing to permit deductions for both tort-feasors' limits and stating that "[w]e see no reason to allow the insurer a 'windfall' when its insured is hurt by more than one underinsured tort-feasor—so long as, of course, the amount the insured recovers does not exceed his or her damages."); *General Accident Insurance Co. v. Wheeler,* 221 Conn. 206, 213-14, 603 A.2d 385, 388-89 (1992) (finding that an "insured need only exhaust the liability bond or insurance policies of one tort-feasor in order for the insured to be eligible to pursue underinsured benefits" since if the UIM insurer's "claim were carried out in practice, the insured could be required to pursue claims of weak liability against third parties, thereby fostering marginal and costly litigation in our courts."); *McAllaster v. Bruton,* 655 F. Supp. 1371, 1379 (D.Me. 1987) (plaintiff only required to exhaust the policies of one of two joint tort-feasors in order to trigger the right to proceed with a UIM claim); *Colonial Penn Insurance Co. v. Salti,* 446 N.Y.S.2d 77, 79, 84 A.D.2d 350, 353 (1982) ("[t]o interpret the insuring agreement so that the insurer's obligation to pay becomes operative only after *all* insurance applicable to *all* vehicles involved in the accident is exhausted, . . . would emasculate the endorsement's intended effect . . . to provide coverage over and above the limits of the tort-feasor's insurance.");

*Motorists Mutual Insurance Co. v. Tomanski,* 27 Ohio St. 2d 222, 223, 271 N.E.2d 924, 925 (1971) (UIM insurer not entitled to offset for the policies of all joint tort-feasors). Compare *Johnson v. American Family Mutual Insurance Co.,* 426 N.W.2d 419, 423 (Minn. 1988) ("since [all tort-feasors] each could be liable for the entire amount [recoverable by the insured], the liability insurance limits of each must be considered in any setoff allowed the underinsurance carrier. We hold that underinsured motorist benefits cover only those damages in excess of the combined liability insurance limits of all tort-feasors").

Assuming arguendo that Ohio Casualty's policy language is not void as violative of public policy, those provisions were nevertheless properly applied by the arbitration panel. Contrary to Ohio Casualty's contention, once Overfield executed a joint tort-feasor release with Masci/Aetna in accordance with Ohio Casualty's written consent to settle, any joint and several liability on the part of Sturchio was nullified. See *Walton, supra; Giant Eagle Markets, supra.* As a consequence, Sturchio could only be held accountable for his proportionate or pro rata share of the total award. 42 Pa.C.S. §8326.

As mentioned above, the Ohio Casualty policy expressly states that "[a]ny amounts otherwise payable for damages which the covered person is legally entitled to recover from the owner or operator of an . . . underinsured motor vehicle because of bodily injury caused by an accident, shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be *legally responsible*." (See Ohio Casualty's petition, exhibit A, p. 6.) (emphasis added) After considering the liability testimony offered by Ohio Casualty, the arbitrators de-

termined that Sturchio was 10 percent "legally responsible" under the policy. Therefore, they reduced the UIM award by 10 percent to signify any sums potentially payable "because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." [4] Consequently, the arbitration panel carefully crafted its award to reflect the permissible credits for the Masci payment, the Erie UIM tender, and Sturchio's pro rata share of the total damages based upon the arbitrators' determination of liability. The panel would have committed an evident miscalculation if it had deducted Sturchio's full policy limits, notwithstanding the foregoing UIM provisions in Ohio Casualty's policy and the absence of joint and several liability vis-a-vis the Masci/Aetna release.

If Ohio Casualty believes that Sturchio's insurer is obligated to contribute more towards Overfield's recovery, it has the ability to request an assignment from Overfield to seek contribution from Sturchio's carrier. See *e.g.. Wheeler,* 603 A.2d at 388. Conversely, if Ohio Casualty considered the Masci payment of $2,500 to be woefully inadequate, it could have preserved its subrogation claim against Masci for any additional UIM proceeds that Ohio Casualty will be obligated to pay by virtue of Masci's underinsured status. See *Kester, supra* at 211, 582 A.2d at 20 ("[s]uch contingencies can be dealt with under [Erie's] right of subrogation").

---

4. Although the arbitrators' assessment of Sturchio's proportionate liability may be binding upon Overfield, it would not have a collateral estoppel effect upon Sturchio who was not a participant in the UIM arbitration proceeding. See *Thompson v. Anderson,* 429 Pa. Super. 532, 535, 632 A.2d 1349, 1351 (1993) (arbitrators' determination that injuries were caused by an intentional act precluded the claimant from pursuing a third party action based upon a negligence theory).

However, it may not attempt to apply unrealistic credits for the full amounts of the Masci and Sturchio policies.

## III. CONCLUSION

Based upon the foregoing, the arbitrators did not exceed their powers or commit evident miscalculation of figures in their award dated July 2, 1998. Accordingly, Ohio Casualty's petition to vacate, modify or correct the arbitration award will be denied and, pursuant to 42 Pa.C.S. §7314(d) and §7315(b), the award of the arbitrators will be confirmed. An appropriate order will follow.

## ORDER

And now, October 14, 1998, upon consideration of the petition of defendant Ohio Casualty Insurance Company to vacate or, in the alternative, to modify or correct an arbitration award pursuant to 42 Pa.C.S. §7314 and §7315, plaintiff's response thereto, the parties' memoranda of law and the oral argument of counsel, and in accordance with the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Defendant's petition to vacate, or in the alternative, to modify or correct an arbitration award pursuant to 42 Pa.C.S. §7314 and §7315 is denied;

(2) The underinsured motorist arbitration award dated July 2, 1998 is confirmed in accordance with 42 Pa.C.S. §7314(d) and §7315(b); and

(3) Judgment is entered in favor of plaintiff Lisa Overfield and against defendant Ohio Casualty Insurance Company in the amount of $77,500.